Alan SEBASTIAN, and Virginia Sebastian as shareholders of D & S Express, Inc., and Cargo Xpress, Inc. suing on behalf of themselves and derivatively for the benefit of D & S Express, Inc., and Cargo Xpress, Inc., Plaintiffs,

v.

D & S EXPRESS, INC. and Cargo Xpress., Inc., Nominal Defendants,

and

Andrew Devery, Jr.; Eileen Devery; Debra Buck; Gary Buck; James Elliott; Lois Elliott; Wayne Elliott; and First Union National Bank, Defendants.

No. CIV.A. 98–3581(WHW).

United States District Court, D. New Jersey.

Aug. 25, 1999.

Paul G. Nittoly, Shanley & Fisher, P.C., Morristown, NJ, for plaintiffs Alan Sebastian, and Virginia Sebastian as shareholders of D & S Express, Inc., and Cargo Xpress, Inc. suing on behalf of themselves and derivatively for the benefit of D & S Express, Inc., and Cargo Xpress, Inc.

Gerald Liloia, Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown NJ, for defendant First Union National Bank.

WALLS, District Judge.

Defendant First Union National Bank brings this motion for judgment on the pleadings. The motion for judgment on the pleadings is granted. The Court dismisses the plaintiffs' claims under common law negligence and conversion as a matter of law and limits the claims brought under 13 Pa.C.S.A. § 3404(d) through application of the statute of limitations found in 13 Pa.C.S.A. § 3118(g) of the Pennsylvania enactment of the Uniform Commercial Code.

### Factual Background

Plaintiffs Virginia and Alan Sebastian, mother and son respectively, together own 50% of the stock of two corporations, D & S Express, Inc. ("D & S") and Cargo Xpress, Inc. ("Cargo Xpress"). D & S and Cargo Xpress are New Jersey corporations with their principal place of business located in Greenbrook, New Jersey. Both companies engage in the interstate shipment of goods in an arrangement where Cargo Xpress's employees handle most of the shipments while D & S provides the equipment and billing services.

The plaintiffs have brought this action on their own behalf and derivatively against defendant First Union National Bank and individual defendants as a result of long-standing embezzlement and fraud, alleged to have been perpetrated by the former president of the two companies, defendant Andrew Devery, Jr. ("Devery") and co-defendants Eileen Devery, Debra

Buck, Gary Buck, James Elliott, Lois Elliott and Wayne Elliott between 1990 and 1997. Specific to the action against First Union National Bank, the plaintiffs have discovered at least eighty-seven checks made out to fictitious payees between April 12, 1993 and July 22, 1997, which were later cashed at the Chester, Pennsylvania branch of the First Union National Bank and its predecessors, First Fidelity Bank and Merchant's Bank.[1] (V.Compl.Ex. B).

Most of these checks were mailed or otherwise transported to Pennsylvania where defendant Debra Buck ("Buck"), Devery's daughter, endorsed and cashed them after they were endorsed in the name of the fictitious payee. The description on the checks indicated that payment was being made for "maintenance" services and some checks had invoice numbers noted. The plaintiffs state that at no time did the fictitious payees render any maintenance services and allege that the invoice numbers are fictitious. (V.Compl.¶¶ 41–48).

Plaintiffs direct three of the twenty-four counts in their Verified Complaint against First Union. The plaintiffs assert that First Union is legally liable pursuant to the Uniform Commercial Code's "fictitious payee" provision in 13 Pa.C.S.A. § 3404, for failure to exercise ordinary care. (V. Compl. Count XXII). Additionally, the plaintiffs assert claims for common law negligence and common law conversion. (V. Compl. Counts XXIII–XXIV).

### Legal Standard

Fed.R.Civ.P. 12(c) provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Because the only difference between a Rule 12(c) motion and a Rule 12(b)(6) motion is the timing of the motion (Rule 12(b)(6) motions must be

---

1. "First Union" as used in this opinion, refers to any of the three banks.

brought before any responsive pleadings are filed), courts apply the same legal standards to decide both types of motions. *Turbe v. Gov't of the Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991); *Maggette v. Dalsheim,* 709 F.2d 800, 802 (2d Cir.1983). On a Rule 12(b)(6) motion, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the plaintiff can prove any set of facts consistent with his/her allegations that will entitle him/her to relief, not whether the person will ultimately prevail. *See Hishon v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

While a court will accept well-pleaded allegations as true for the purposes of motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993); *Violanti v. Emery Worldwide A–CF Co.,* 847 F.Supp. 1251, 1255 (M.D.Pa.1994). Moreover, the claimant must set forth sufficient information to outline the elements of the claims or to permit inferences to be drawn that these elements exist. See Fed. R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Analysis

I. *Claims Under 13 Pa.C.S.A. § 3404 and Applicable Statute of Limitations for Checks Presented Earlier than Three Years Before the July 31, 1998 Filing of the Verified Complaint.*

The complaint charges that the First Union Bank is liable under 13 Pa.C.S.A. § 3404. The plaintiffs maintain that the statute is applicable based on its "fictitious payee" provision. This section, the Pennsylvania codification of the Uniform Commercial Code ("UCC"), contains an outline of rules for the management of instruments made out to a "fictitious person" (§ 3404(b)) and grants a cause of action for failure to exercise ordinary care (§ 3404(d)).

> With respect to an instrument to which subsection (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

13 Pa.C.S.A. § 3404(d). Defendant, First Union, does not contest the applicability of this statute but asks this Court to apply the appropriate statute of limitations found in 13 Pa.C.S.A. § 3118(g), which would bar the cause of action with regard to checks cashed earlier than three years ago.

This Court must first determine whether the statute of limitations in 13 Pa.C.S.A. § 3118(g) applies to the plaintiffs' claims under § 3404(d) and then ascertain which claims on specific checks will be barred. Section 3118(g) requires that:

> Conversion, breach of warranty and other Division 3 actions. -Unless governed by other law regarding claims for indemnity or contribution, an action: (1) for conversion of an instrument, for money had and received or like action based on conversion; (2) for breach of warranty; or (3) to enforce an obligation, duty or right arising under this division and not governed by this section; must be commenced within three years after the cause of action accrues.

13 Pa.C.S.A. § 3118(g). The defendant has invoked the statute of limitations in its brief but could not direct the Court to a Pennsylvania opinion applying § 3118 to a § 3404 action. (Def. Mem. In Supp. at 6). The Court acknowledges that the plain-

tiffs' action under § 3404(d) is one "to enforce an obligation, duty or right" arising under section three of the UCC. The duty in this case is the duty "to exercise ordinary care in paying or taking the instrument." 13 Pa.C.S.A. § 3404(d). Thus the action "must be commenced within three years after the cause of action accrues." 13 Pa.C.S.A. § 3118(g).

The Third Circuit discussed the application of the § 3118 statute of limitations in actions involving the embezzlement of negotiable instruments. *Menichini v. Grant,* 995 F.2d 1224, 1228 n.5, 20 UCC Rep. Serv.2d 959 (3d Cir.1993). Further, a colleague in the Eastern District of Pennsylvania has applied the six-year statute of limitations of § 3118(a) in an Article 3 action to collect on a promissory note. *See Kawac, Inc. v. Cohen,* 1996 WL 635652, *4 (E.D.Pa. November 1, 1996). From an examination of the plain language of the statute and a review of cases involving Article 3 UCC actions, this Court finds the § 3118(g) statute of limitations to be applicable to plaintiffs' claims under § 3404(d).

■ The statute thereby time-bars the plaintiffs' claims on those checks on which causes of action accrued more than three years before the July 31, 1998 filing date of plaintiffs' Verified Complaint. Our Circuit has defined when a cause of action accrues on a check. In its refusal to employ the "discovery rule"[2] in a UCC conversion action on negotiable instruments, the Third Circuit declared "in the absence of fraud by those invoking the statute of limitations, a cause of action for conversion of negotiable instruments accrues when, irrespective of the plaintiff s ignorance, the defendant wrongfully exercises dominion." *Menichini,* 995 F.2d 1224, 1231, 20 UCC Rep.Serv.2d 959. Therefore, in application of the § 3118(g) statute of limitations to

this case, the cause of action will have been deemed to have accrued on the date the defendant First Union "exercise[d] dominion." As a result, all checks that had been in the defendant's dominion more than three years before the filing of the complaint on July 31, 1998 are time barred.

■ The plaintiffs, in opposition to the defendant's motion for judgment on the pleadings, argue that material issues of fact exist which preclude judgment. In particular, the plaintiffs allege fraudulent conduct on the part of First Union which they state would prelude judgment on the pleadings. (Pt. Mem. In Opp. to Def. Mot. At 6). Furthermore, the plaintiffs suggest that their allegations of fraud serve to toll the UCC's statute of limitations. (*Id.* At 9). With regard to possible fraud, the plaintiffs urge the Court to make the "obvious possible inference" that Debra Buck may have been able to cash such a large quantity of checks at First Union as a result of obtaining the assistance of one or more employees of the Chester, Pa. branch. (*Id.* At 8). That a "possible" inference can be made is of no moment. The plaintiffs in their Verified Complaint have not plead fraud on the part of First Union. This Court, as previously stated, will accept well-pleaded allegations as true for the purposes of motion, but will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993); *Violanti v. Emery Worldwide A–CF Co.,* 847 F.Supp. 1251, 1255 (M.D.Pa.1994). The only support for this inference was an interpreta-

---

**2.** The discovery rule is an equitable exception to the general rule that the statute of limitations begins to run when the cause of action accrues. The discovery rule which arises from the inability of the injured party to know of the injury or its cause "provides that 'the statute of limitations begins to run as soon as

the plaintiff knows or reasonably should know,' " that he or she has been injured by another. *Menichini v. Grant,* 995 F.2d 1224, 1228 n. 4, 20 UCC Rep.Serv.2d 959 (3d Cir. 1993) (quoting *Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir.1991)).

tion of the words "KNOWN FGN" stamped on the back of the checks submitted as exhibits. The plaintiffs allege that "KNOWN FGN" means "known foreign" and Ms. Buck, a non-First Union account holder, had her checks cashed because she was known by one or more First Union employees. (Pt. Mem. In Opp. to Def. Mot. At 8). Yet, this speculative inference was not even offered in the plaintiffs' pleadings and thus cannot deter this Court from granting judgement on the pleadings. Nor does it toll the statute of limitations.

II. *Whether § 3420 of the Pennsylvania UCC Bars Plaintiffs' Common Law Conversion Claim*

The defendant asserts that the plaintiffs cannot bring a common law conversion claim as a matter of law. The defendant points to § 3420 of the Pennsylvania UCC as a proscriptive bar to any conversion action: "[a]n action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or endorsee who did not receive the delivery of the instrument either directly or through delivery to an agent or copayee." 13 Pa.C.S.A. § 3420. In reply, the plaintiffs have stated that the conversion action is not being brought by the "issuer or drawer" of the checks and therefore, § 3420 is inapplicable. The legal questions before the Court are whether § 3420 bars a common law conversion claim brought by "issuers or acceptors" and whether the derivative plaintiffs are "issuers" as defined by the statute.

■ Section 3420 is properly applicable to the plaintiffs' conversion action. Former section 3419(a) codified the tort of conversion. *Menichini*, 995 F.2d at 1228. Now, § 3420 exists as a modification of § 3419 and states a general rule that the law applicable to conversion of personal property also applies to instruments. 13 Pa.C.S.A. § 3420 (1999 Electronic Update Comment 1). By its plain language, § 3420 codifies, and subsumes a cause of

action for conversion based on the facts of this case.

While courts were once divided under the former Article 3 of the UCC as to whether a drawer on a check can assert rights against the depository or collecting bank who took the check, the language of § 3420 clarifies the situation and follows the rule of *Stone & Webster Corp. v. First National Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358 (1962). *See* 13 Pa.C.S.A. § 3420 (1999 Electronic Update Comment 1.). In *Stone*, the Supreme Judicial Court of Massachusetts, while ruling on an action by a drawer against a collecting bank which cashed checks with forged endorsements, held that a drawer could not bring a conversion action directly against the collecting bank. *Stone*, 184 N.E.2d at 363. *See also Manfredi v. Dauphin Deposit Bank*, 697 A.2d 1025, 1028, 33 UCC Rep. Serv.2d 372 (Pa.Super.1997). The language of § 3420 parallels this holding by ordaining that the "issuer or acceptor of the instrument" may not bring a conversion action. 13 Pa.C.S.A. § 3420.

■ The Pennsylvania enactment of the UCC defines "issuer" as the "maker or drawer of an instrument." 13 Pa.C.S.A. § 3105. And, under the statute, "drawer" is the "person who signs or is identified in a draft as a person ordering payment." 13 Pa.C.S.A. § 3103. The plaintiffs assert that they are not the *"person"* who signed the draft or the *"person"* who ordered payment. (Pt. Mem. In Opp. to Def. Mot. at 14). They argue that Devery is the issuer of the checks by definition. (*Id.*) However, this discounts the fact that as President, Devery was an agent of the issuer, D & S Express, Inc., whose corporate name appears at the top of each check. In *Stone*, it was the plaintiff, Stone & Webster Engineering Corporation, that the court considered the drawer and not the individual who signed the corporate check. *Stone*, 184 N.E.2d at 359. This Court likewise considers the corporate person, D & S Express, Inc., to be the drawer and issuer of the disputed checks.

As derivatives of the corporation, the plaintiffs must stand in the shoes of the corporation, in this case, the issuer. Accordingly, the plaintiffs as issuers, makers or drawers, of the checks cannot maintain the conversion action because such is barred by 13 Pa.C.S.A. § 3420(a).

### III. Whether the UCC's Provision § 3404 on "Fictitious Payees" Precludes a Common Law Negligence Claim

The defendant also contends that the common law negligence count of the plaintiffs' complaint should be dismissed because it has been displaced by the UCC's codification of commercial law relating to negotiable instruments.

■ In deciding whether UCC § 3404 precludes a common law negligence action, the Court acknowledges that principles of law and equity can generally be used to supplement provisions of the UCC. *See* 13 Pa.C.S.A. § 1103. The Third Circuit has advised that the displacement analysis begins with two basic propositions. "First, the UCC is to be 'liberally construed and applied to promote its underlying purposes and policies,' which include simplifying and clarifying the law governing commercial transactions, fostering the expansion of commercial practices, and standardizing the laws of the various jurisdictions." *New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.*, 690 F.2d 339, 345, 34 UCC Rep.Serv. 1057 (3d Cir.1982) (citing Section 1102(*l*)-(2)); *see also* 13 Pa. C.S.A. § 1102(b). Second, the *New Jersey Bank* court reminds the reader that "the UCC does not purport to preempt the entire body of law affecting the rights and obligations of parties to a commercial transaction." *New Jersey Bank*, 690 F.2d at 345. Courts have interpreted these two basic principles to mean that the UCC does not displace the common law of tort unless reliance on the common law would "thwart the purposes of the Code." *New Jersey Bank*, 690 F.2d at 345. Yet, where the Code provides a comprehensive remedy for the parties to a transaction, a common law action will be barred. *New Jersey Bank*, 690 F.2d at 345 (concluding that a common-law tort action would be barred where Article 8 provided a comprehensive remedy); *See also, Yahn & McDonnell, Inc. v. Farmers Bank of the State of Delaware*, 708 F.2d 104, 112, 35 UCC Rep.Serv. 1533 (3d Cir.1983).

■ Here, § 3404 provides the plaintiffs with a comprehensive remedy applying a standard very similar to common law negligence, for if a party "fails to exercise ordinary care in paying or taking the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." 13 Pa.C.S.A. § 3404. The UCC requires a prima facie presentation of failure to exercise ordinary care and causation almost identical to what common law negligence would require. Common law negligence and the UCC cause of action would necessitate the same legal analysis. "This duplication suggests that the Code comprehensively covers the field of legal theories." *Equitable Life Assurance Society of the United States v. Okey*, 812 F.2d 906, 908, 3 UCC Rep.Serv.2d 1035 (4th Cir. 1987) (citing *New Jersey Bank*, 690 F.2d at 346). It follows then that here, the plaintiffs' action of common law negligence is barred because the UCC provides a comprehensive remedy.

### Conclusion

The plaintiffs' claims under 13 Pa.C.S.A. § 3404 are dismissed with respect to those checks on which the causes of action accrued before July 31, 1995 by application of the statute of limitations. The common law negligence and common law conversion claims are dismissed as a matter of law. Defendant's motion for judgment on the pleadings is granted.

**SO ORDERED.**

### ORDER

This motion is before the Court by Defendant First Union National Bank ("First

Union"), pursuant to Fed.R.Civ.P. 12(c) for an Order for judgment on the pleadings: (1) dismissing, in part, the Twenty–Second Count of the Plaintiffs' Verified Complaint brought under 13 Pa.C.S.A. § 3404 as to all checks for which the cause of action arose outside the permissible statute of limitations; (2) dismissing the common law negligence and conversion claims in the Twenty-third and Twenty–Fourth Counts of the Verified Complaint, respectively, for failure to state a claim upon which relief can be granted;

It is on this 25th day of August, 1999

**ORDERED** that the Twenty–Second Count of the Plaintiffs' Verified Complaint be dismissed with regard to all claims on checks that were allegedly cashed before July 31, 1995; and it is further

**ORDERED** that the Twenty–Third Count of the Plaintiffs' Verified Complaint brought on common law negligence and the Twenty–Fourth Count on common law conversion be dismissed for failure to state a claim upon which relief can be granted.