863 A.2d 402 (2005)
374 N.J. Super. 57
NEW JERSEY LAWYERS' FUND FOR CLIENT PROTECTION, Plaintiff-Appellant,
v.
Jean A. PACE, Defendant, and
Summit Bank, Defendant-Respondent.
New Jersey Lawyers' Fund for Client Protection, Plaintiff-Appellant,
v.
Jean A. Pace, Crawford & Company, and Sun Trust Bank, Defendants, and
Summit Bank, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 2004.
Decided January 4, 2005.
*403 William James Thomas, Wayne, argued the cause for appellant.
David B. Grantz, Newark, argued the cause for respondent (Meyner and Landis, attorneys; Mr. Grantz, on the brief). No other parties participated in this appeal.
Before Judges PETRELLA, PARKER and YANNOTTI.
The opinion of the court was delivered by
PETRELLA, P.J.A.D.
Plaintiff New Jersey Lawyers' Fund for Client Protection (the Fund), established pursuant to R. 1:28, appeals from orders entered dismissing its complaints in two matters. Summary judgment was granted in favor of the defendant Summit Bank (Summit) in each case on the ground that the applicable statute of limitations in the Uniform Commercial Code (UCC) barred the Fund's claims against Summit based on conversion.
On appeal the Fund argues that the motion judge committed error in failing to apply the time of discovery rule in determining the date its cause of action for conversion accrued.
On July 25, 2001 and July 17, 2002, the Fund filed complaints against Jean Pace and Summit (subsequently doing business as Fleet Bank).[1] Pace was an attorney who had misappropriated funds from her clients by forging their endorsements on settlement checks. By virtue of assignments from the various victims, the Fund sued Pace and also Summit. The Fund alleged in its complaints that Summit was liable in conversion for accepting the forged settlement checks for deposit.
Pace[2] did not file an answer and the Fund obtained a default judgment against her on April 17 and December 12, 2002, respectively. Neither she nor any other party has participated in this appeal.
Summary judgment was granted in the first action on March 10, 2003, on the ground that the conversion action against Summit was barred by the UCC statute of limitations for claims of conversion of negotiable instruments. In a June 17, 2003 written opinion, the motion judge held that *404 the time of discovery rule does not apply in determining the date of accrual of a cause of action under the UCC for conversion of a negotiable instrument. A consent order resolved the second case in light of the decision in the first case.
The first appeal involves Pace's settlement of claims of five of her clients without their knowledge. She then proceeded to forge each client's signature on the respective settlement check, and deposited the checks into her own account at Summit. The clients from whom Pace stole included Stephen Pierce ($5,500 check deposited by Pace on May 12, 1997), Christopher Cocca ($5,000 check deposited on May 12, 1997), Marvin Valle ($4,500 check deposited on October 9, 1996), Eureka Reese ($4,000 check deposited September 25, 1995), and James Perry and his late wife Eola ($2,650 check deposited November 28, 1995). The clients were unaware of these events until so informed by the Office of Attorney Ethics on January 20, 2000 (Pierce and Cocca),[3] February 1, 2000 (Valle), April 5, 2000 (Reese), and May 9, 2000 (Perry).
The second appeal involves a situation where Pace informed her client, Daniel Hogger, that his suit had settled for $21,000, but failed to tell him about the $4,000 check she had received from another defendant. Pace forged Hogger's endorsement on the $4,000 check and deposited it into her Summit account around May 15, 1998. After being notified by the Office of Attorney Ethics, Hogger filed a claim with the Fund on or about April 11, 2001.
After being informed about Pace's actions by the Office of Attorney Ethics, her clients filed claims with the Fund. The claims were approved in amounts that we are told reflected a reduction for a sum attributable to the amount of counsel fees Pace would have been entitled to, and the clients assigned their rights to the Fund pursuant to R. 1:28-3(e). The Fund now asserts its rights as assignee against Summit for strict liability for conversion of negotiable instruments.

I.
The Fund argues that the New Jersey Legislature's choice of language in N.J.S.A. 12A:3-118(g) is significant and should lead us to conclude that conversion of negotiable instruments should not be considered as accruing until the discovery of the conversion. N.J.S.A. 12A:3-118(g), the critical subsection applicable in this appeal, provides a statute of limitations for conversion of a negotiable instrument:
Unless governed by other law regarding claims for indemnity or contribution, an action for conversion of an instrument, for money had and received, or like action based on conversion, for breach of warranty, or to enforce an obligation, duty, or right arising under this chapter and not governed by this section must be commenced within three years after the cause of action accrues.

[N.J.S.A. 12A:3-118(g) (emphasis added).]
Comment 6 to this subsection states:
Subsection (g) covers warranty and conversion cases and other actions to enforce obligations or rights arising under Article 3. A three-year period is stated and subsection (g) follows general law in *405 stating that the period runs from the time the cause of action accrues. Since the traditional term "cause of action" may have been replaced in some states by "claim for relief" or some equivalent term, the words "cause of action" have been bracketed to indicate that the words may be replaced by an appropriate substitute to conform to local practice.
[N.J.S.A. 12A:3-118, cmt. 6.]
The Fund argues that by choosing the language "after the cause of action accrues" instead of time-specific language, the Legislature intended the application of the discovery rule from the date of conversion as it defines it. However, not only does the Fund not provide any legislative history or support for its suggested interpretation, its argument could support the assertion that until discovered, there is no conversion of a negotiable instrument as far as the defrauded payee is concerned, even where the funds have been actually misappropriated and long since disbursed. The legislative history by way of the UCC comments does not support the Fund's position.
Comment 1 to section 3-118 states:
Section 3-118 does not define when a cause of action accrues. Accrual of a cause of action is stated in other sections of Article 3 such as those that state the various obligations of parties to an instrument. The only purpose of Section 3-118 is to define the time within which an action to enforce an obligation, duty, or right arising under Article 3 must be commenced.
[N.J.S.A. 12A:3-118, cmt. 1.]
See also Comment 6, quoted ante, opinion page 61, 863 A.2d 404-05.
Conversion occurs when the bank pays on the forged endorsement. N.J.S.A. 12A:3-420(a). That subsection of the UCC states in pertinent part:
The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment....
Therefore, the accrual of a cause of action in conversion occurs when the bank pays on the forged endorsement, and thus, the UCC statute of limitations for conversion of a negotiable instrument runs out three years after that time under N.J.S.A. 12A:3-118(g). Chapter 3 of the UCC sets forth a comprehensive scheme regulating negotiable instruments in the interest of creating uniformity in financial dealings with such documents. Uniform Commercial Code § 3 (amended 2002), 2 U.L.A. 9-10 (2004). The language of the UCC is clear in imposing a three-year period to assert claims of conversion and we need not resort to rules of construction. Lozano v. Frank DeLuca Construction, 178 N.J. 513, 522, 842 A.2d 156 (2004). We merely enforce the statute as written. In re Estate of Post, 282 N.J.Super. 59, 72, 659 A.2d 500 (App.Div.1995).

II.
The Fund argues that the motion judge erred in failing to apply the time of discovery rule in determining the date of accrual of its cause of action for conversion under the UCC, see N.J.S.A. 12A:3-420.
There is no controlling or persuasive New Jersey precedent governing the issue of when the cause of action in a conversion action accrues under the UCC with respect to a bank's processing of checks. The Fund argues that because there are no *406 reported New Jersey cases that have addressed the accrual issue under N.J.S.A. 12A:3-118, we should rely on what it calls an unreported New Jersey trial court opinion, which is actually a statement of reasons, and a United States District Court opinion that applied the discovery rule to the former six-year statute of limitations. We reject this invitation.
The unreported New Jersey trial court decision upon which the Fund relies is a written statement captioned Petrie v. Hamilton, (HNT-L-39-98), that refers to a "return date" of May 26, 2000. We are furnished with what appears to be a nine-page unsigned statement of a decision on a summary judgment motion that may have been attached to an order that does not appear in the record of this appeal. In Petrie, the time of discovery rule was held applicable to a conversion claim under the six-year statute of limitations in N.J.S.A. 2A:14-1, which applied to the deposits at issue in that case, all of which were made before January 16, 1992.[4] That statute provided:
Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

[N.J.S.A. 2A:14-1 (emphasis added).]
Petrie involved events that occurred prior to the adoption in 1995 of the three-year limitation period in N.J.S.A. 12:3-118(g), effective June 1, 1995, and the simultaneous modification of N.J.S.A. 12A:3-419 by N.J.S.A. 12A:3-420. With the adoption of the 1995 amendments to the UCC, the importance of uniformity in the UCC's application again came to the forefront. While Petrie acknowledged the language of the formerly applicable UCC provision, concededly similar to that of the present statute, we owe Petrie no deference as an unreported and nonbinding unpublished opinion of a trial court, and we also find it unpersuasive.
Furthermore, the reported district court opinion purporting to apply New Jersey law in the context of a bankruptcy, DeHart v. First Fid. Bank, N.A./ South Jersey, 67 B.R. 740 (D.N.J.1986), addressed the pre-amendment version of the UCC provisions and moreover, in 1993, the Third Circuit declined to follow DeHart's holding in Menichini v. Grant, 995 F.2d 1224 (3d Cir.1993). Thus, we are not persuaded by either decision.
Instead, we consider the decisions of other states that have addressed this issue as persuasive authority, recognizing that the UCC is to be construed uniformly, particularly in the area of banking procedures and negotiable instruments.[5]
Other jurisdictions are virtually unanimous in holding contrary to the Fund's position. Only a few courts have ruled in *407 favor of the application of a time of discovery rule in actions for conversion under the UCC.[6] The vast majority of jurisdictions have held that the discovery rule does not apply to actions against banks for conversion of negotiable instruments where, as here, there is no assertion of fraudulent concealment by the defendant bank.[7]
For the most part, the cases adhering to the majority rule arise in the context of forged checks misappropriated by dishonest employees in the context of an employer-employee relationship. See e.g. Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union, 286 Ill.App.3d 1069, 222 Ill.Dec. 710, 678 N.E.2d 322 (1997); Palmer Mfg. & Supply, Inc. v. BancOhio Nat'l Bank, 93 Ohio App.3d 17, 637 N.E.2d 386 (1994); Menichini, supra (995 F.2d 1224); Husker News Co. v. Mahaska State Bank, 460 N.W.2d 476 (Iowa 1990). While recognizing that some courts have "chose[n] to favor the rights of unsuspecting victims of forgery over the broader interest of the commercial world," the courts adopting the majority viewpoint have held that such a choice ignores the goals of the UCC. Husker News, supra (460 N.W.2d at 479).
As tempting a choice as that may be in an individual case, however, we think the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitation period, while periodically harsh in some cases, best serves the twin goals of swift resolution of controversies and "certainty of liability" advanced by the U.C.C.

[Ibid. (citing Fuscellaro v. Industrial Nat'l Corp., 117 R.I. 558, 563, 368 A.2d 1227 (1977)) (emphasis added).]
Despite its position as an assignee, the Fund argues that there should be an exception for it to allow use of the discovery rule because of the purpose for its existence, although it recognizes that even applying the time of discovery rule leaves an issue to be decided in the trial court of whether the discovery rule would be applied under the circumstances of each claim. It argues that the rationale of the Husker News case should not be applicable in the context of the attorney-client relationship. This apparently is its position even though the Husker News rationale might apply to the defrauded client in *408 the absence of an assignment to the Fund.[8] The Fund asserts that the client is not in the best position to monitor the type of account at issue, an attorney trust account, nor would careful bookkeeping by the client even detect such a forgery. It asserts that by the very nature of the attorney-client relationship, the client depends upon his or her attorney to act in the client's best interest, and particularly, not to harm the client by appropriating settlement checks.
Here, the clients, with the exception of Hogger, did not know that a settlement had been reached by Pace.[9] In the case of Hogger, he was informed by Pace that a settlement had been reached, however, he was not told that there had been another check, and therefore, considered the check that he did receive as the full amount to which he was entitled. Therefore, except for Pierce, Cocca and Hogger, Pace's other clients had no knowledge of the existence of any settlement check with their names on it within the applicable statute of limitations period in N.J.S.A. 12A:3-118(g).
These cases fall into the category of unsuspecting victims of forgery that the Iowa Supreme Court cautioned it would be tempted to favor, but recognized that doing so would undermine the very goals of the UCC. Husker News, supra (460 N.W.2d at 479). This principle has been cited by courts that have adopted the majority viewpoint as justification for the refusal to apply the time of discovery rule in conversion actions involving negotiable instruments. Recognizing the goal of promoting uniformity in the application of the UCC, we find the holding of sister states applying the majority rule to be most persuasive. We hold that the motion judge correctly refused to apply the time of discovery rule to the bank in the situations presented.[10]
We are satisfied that we should follow the vast majority of courts in this country that have uniformly held that the cause of action against a bank in a conversion action with respect to negotiable instruments accrues at the time of conversion, and that the time of discovery rule does not apply under the UCC provision. The rule is more appropriately applied to cases involving other torts such as breach of warranty, professional malpractice, negligence and product liability, fraud and tortious misrepresentation, as well as workers' compensation situations, rather than under negotiable instruments law. See Husker News, supra (460 N.W.2d at 477); Haddad's of Illinois, supra (222 Ill.Dec. 710, 678 N.E.2d at 325).
Affirmed.
NOTES
[1] Fleet Bank now operates as Bank of America. For purposes of this opinion we refer only to Summit.
[2] Jean A. Pace of Jersey City was disbarred by the New Jersey Supreme Court on March 6, 2000, 162 N.J. 656, 745 A.2d 1209, for stealing from her clients.
[3] When the Fund first became aware of the situation is not clear from the record. However, some of the individuals and the Fund had knowledge of the forgeries before the three-year period (measured from the deposit of the check) would have expired. Neither the Fund nor Pierce, Cocca or Hogger made immediate demand on the depository or collecting bank.
[4] N.J.S.A. 12A:3-118(g) did not apply at that time and the parties did not dispute the applicability of N.J.S.A. 2A:14-1, only whether the statute had run as of the filing date of the complaint.
[5] "Section 3-118 ... include[s] statutory periods of limitations which will make the law uniform rather than leaving the topic to widely varying state laws." Uniform Commercial Code § 3 (amended 2002), 2 U.L.A. 13 (2004).
[6] See Stjernholm v. Life Ins. Co. of North America, 782 P.2d 810 (Colo.Ct.App.1989), cert. denied, (Nov. 13, 1989); DeHart v. First Fid. Bank, N.A./South Jersey, 67 B.R. 740 (D.N.J.1986); Branford State Bank v. Hackney Tractor Co., 455 So.2d 541 (Fla.Dist.Ct.App. 1st Dist.1984).
[7] See Sebastian v. D & S Express, Inc., 61 F.Supp.2d 386 (D.N.J.1999); Menichini v. Grant, 995 F.2d 1224, 1231 (3d Cir.1993); Kuwait Airways Corp. v. American Security Bank, N.A., 890 F.2d 456, 461 (D.C.Cir.1989); First Investors Corp. v. Citizens Bank, Inc., 757 F.Supp. 687, 690-692 (W.D.N.C.1991); Husker News Co. v. Mahaska State Bank, 460 N.W.2d 476, 477-478 (Iowa 1990); Wang v. Farmers State Bank, 447 N.W.2d 516, 518-519 (S.D.1989); Fuscellaro v. Industrial Nat'l Corp., 117 R.I. 558, 562-564, 368 A.2d 1227, 1231 (1977); Palmer Mfg. & Supply, Inc. v. BancOhio Nat'l Bank, 93 Ohio App.3d 17, 22, 637 N.E.2d 386, 391 (1994); Lyco Acquisition 1984 Ltd. Partnership v. First Nat'l Bank, 860 S.W.2d 117, 119 (Tex.Ct.App.1993); Insurance Co. of North America v. Manufacturers Bank, 127 Mich.App. 278, 283-284, 338 N.W.2d 214, 216 (1983); Continental Cas. Co. v. Huron Valley Nat'l Bank, 85 Mich.App. 319, 325, 271 N.W.2d 218, 221 (1978); Southwest Bank & Trust Co. v. Bankers Commercial Life Ins. Co., 563 S.W.2d 329, 331-332 (Tex.Civ.App.1978); Gerber v. Manufacturers Hanover Trust Co., 64 Misc.2d 687, 688-689, 315 N.Y.S.2d 601, 603 (1970); 4 W. Hawkland & L. Lawrence, Uniform Commercial Code Series § 3-419:10, at 983 (1994).
[8] Viewed in this manner, the issue could be viewed as whether the rights of the assignee can rise higher than the rights of the assignor. James Talcott, Inc. v. H. Corenzwit & Co., 76 N.J. 305, 309, 387 A.2d 350 (1978). The general rule as to an assignee's rights rising no higher than the rights of the assignor's rights would militate against a special rule for the attorney-client relationship and the status of the Fund as assignee. See Lech v. State Farm Ins. Co., 335 N.J.Super. 254, 258, 762 A.2d 269 (App.Div.2000); General Accident Ins. Co. v. New York Marine & Gen. Ins. Co., 320 N.J.Super. 546, 554, 727 A.2d 1050 (App.Div.1999); C.J. Simons & Co. v. American Mut. Liab. Ins. Co., 107 N.J.Super. 209, 214, 257 A.2d 743 (Law Div.1969).
[9] The record is silent as to whether Pace had malpractice or other insurance that might cover errors and omissions claims.
[10] The causes of action against the defendant attorney were not affected.