915 A.2d 42

PSAK, GRAZIANO, PIASECKI & WHITELAW, PLAINTIFF–RE-
SPONDENT, v. FLEET NATIONAL BANK AND GE CAPITAL
MORTGAGE SERVICES A/K/A WELLS FARGO HOME MORT-
GAGE, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued Telephonically November 15, 2006—Decided January 26, 2007.

200

Before Judges LEFELT, PARRILLO and SAPP–PETERSON.

*Anne E. Walters* argued the cause for appellant *GE Capital Mortgage Services* a/k/a *Wells Fargo Home Mortgage* (*Charles Shimberg,* attorney; *Ms. Walters,* on the brief).

*Hubert C. Cutolo* argued the cause for appellant *Bank of America,* successor in interest to *Fleet National Bank* (*Sodini & Spina,* attorneys; *Gregg S. Sodini,* on the brief).

*Donald B. Whitelaw* argued the cause for respondent *Psak, Graziano, Piasecki & Whitelaw* (*Graziano, Piasecki, Whitelaw & Simko,* attorneys; *Mr. Whitelaw,* on the brief).

The opinion of the court was delivered by

PARRILLO, J.A.D.

Defendants Fleet National Bank (Fleet)[1] and GE Capital Mortgage Services (GE Capital)[2] appeal from a Special Civil Part judgment in favor of plaintiff law firm, Psak, Graziano, Piasecki & Whitelaw, in the amount of $6203, on the basis that plaintiff's action on a negotiable instrument was barred by the three-year statute of limitations of the Uniform Commercial Code (UCC), *N.J.S.A.* 12A:4–111. For reasons that follow, we reverse.

The facts are uncomplicated. In October 1998, plaintiff, acting as a settlement agent in a real estate transaction, drafted and mailed a check drawn on its attorney trust account with Fleet payable to GE Capital to pay off a mortgage in a closing. GE Capital then presented the check to its bank, NationsBank, for $6000 more than the sum for which it was drafted, apparently misreading the hand-written numerals even though the correct amount of $51,547.41 was also noted in typed text. The check was encoded in the erroneous amount and was subsequently honored by Fleet and charged to the law firm's account. On October 23, 1998, GE Capital sent the seller in the underlying real estate transaction a check in the amount of $6,676.75 as "escrow overage".

Having failed to discover the discrepancy until some four years later in 2002, despite having received a bank statement on October 30, 1998 showing the $6000 overcharge, and despite its obligation to conduct monthly reconciliations of its trust account pursuant to *Rule* 1:21–6(c), plaintiff filed a lawsuit in September 2004, nearly six years after the check was negotiated, to recover the $6000 overage paid by Fleet to GE Capital. In its complaint, plaintiff alleged that GE Capital, through "mistake, negligence, or inadvertence" presented the check in the incorrect amount and was

---

[1] Through acquisition, Fleet is the successor-in-interest to Summit Bank, where the law firm's trust account was first opened, and Fleet has since merged with Bank of America.

[2] GE Capital is also known as Wells Fargo Home Mortgage.

unjustly enriched in the amount of $6,000, and that Fleet negligently paid the incorrect amount with "complete disregard of the type-written terms" which indicated that $51,547.74 was to be paid.

Defendants moved for summary judgment, claiming that plaintiff's action was time-barred, having been instituted outside the three-year statute of limitations of *N.J.S.A.* 12A:4–111. They argued that plaintiff's common-law negligence action actually arises under Article 4 of the UCC, which defines the rights of parties in matters concerning negotiable instruments, and as such is governed by the UCC's three-year statute of limitations. Plaintiff countered that the UCC does not displace its common-law tort action, for which the six-year statute of limitations of *N.J.S.A.* 2A:14–1 applies, but that even if the UCC's shorter term governs, the discovery rule applies and its action accrued when plaintiff discovered the error, not when the check was negotiated.

The judge denied summary judgment, finding the lawsuit was filed within six years of when the action accrued, and that even if the three-year limit applied, the discovery rule would serve to toll the statute and allow the action. A bench trial ensued at the conclusion of which the judge entered judgment for plaintiff in the amount of $6000 plus $203 in costs, and found that Fleet was entitled to indemnification from GE Capital. This appeal by both defendants follows.

■ Our review of a trial judge's decision as to the applicable statute of limitations is plenary and *de novo*. *See Balsamides v. Protameen Chems, Inc.*, 160 *N.J.* 352, 372, 734 *A.2d* 721 (1999). Moreover, we do not owe deference to the trial court's determination of a strictly legal question. *Manalapan Realty, L.P. v. Tp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.2d* 1230 (1995). We are not bound by a trial judge's "construction of the legal principles." *Lombardo v. Hoag*, 269 *N.J.Super.* 36, 47, 634 *A.2d* 550 (App.Div.1993), *certif. denied*, 135 *N.J.* 469, 640 *A.2d* 850 (1994).

An action involving a negotiable instrument accrues at the time the check is negotiated; that is, the statute of limitations begins to run at the time the check amount is debited from the maker's account. *New Jersey Lawyers' Fund for Client Protection v. Pace,* 374 *N.J.Super.* 57, 863 *A.*2d 402 (App.Div.2005), *aff'd per curiam,* 186 *N.J.* 123, 892 *A.*2d 661 (2006); *accord Menichini v. Grant,* 995 *F.*2d 1224, 1230 (3d Cir.1993). As to the applicable limitations period for a cause of action on a negotiable instrument once accrued, our Supreme Court has held that "the Uniform Commercial Code ... provides a comprehensive framework for allocating and apportioning the risk of handling checks" and that the free flow of commerce demands commercial certainty. *City Check Cashing v. Manufacturers Hanover Trust,* 166 *N.J.* 49, 57, 64, 764 *A.*2d 411 (2001). Indeed, the UCC displaces the common-law where reliance on the common law would thwart the purposes of the UCC. *Sebastian v. D & S Express, Inc.,* 61 *F.Supp.*2d 386, 391 (D.N.J.1999) (applying Pennsylvania law, but the relevant UCC sections are identical to those enacted in New Jersey).

On this score, *N.J.S.A.* 12A:4–101, Official Comment 3, states that Article 4 of the UCC "defines the rights between the parties with respect to bank deposits and collections.... The revisions in Article 4 are intended to create a legal framework ... for the benefit of all customers." In this regard, "the UCC is to be liberally construed and applied to promote its underlying purposes and policies, which include simplifying and clarifying the law governing commercial transactions, fostering the expansion of commercial practices, and standardizing the laws of the various jurisdictions[.]" *Sebastian, supra,* 61 *F.Supp.*2d at 391.

The statute of limitations for actions under Article 4 is codified at *N.J.S.A.* 12A:4–111, which provides that

An action to enforce an obligation, duty, or right arising under this chapter must be commenced within three years after the cause of action accrues.

[*N.J.S.A.* 12A:4–111.]

Here, there is no question that plaintiff's action is one to enforce its rights arising under Article 4 of the UCC, particularly *N.J.S.A.*

12A:4–401, and that the UCC provides plaintiff a comprehensive remedy. Indeed, plaintiff admits it had a UCC-based claim against Fleet subject to the UCC's three-year statute of limitations. However, plaintiff argues that the UCC does not displace its common-law negligence action against GE Capital, which is not a bank. We fail to see the distinction.

In the first place, the UCC "shall be liberally construed and applied to promote its underlying purposes and policies[,]" *N.J.S.A.* 12A:1–102(1) which are "to simplify, clarify and modernize the law governing commercial transactions", and "to make uniform the law among the various jurisdictions." *N.J.S.A.* 12A:1–102(2)(a). Thus, the UCC's limitations period applies broadly to actions to enforce "an obligation, duty, or right arising under [Article 4]," *N.J.S.A.* 12A:4–111, and Article 4 generally "defines the rights between the parties with respect to bank deposits and collections." *N.J.S.A.* 12A:4–101, Official Comment 3. Necessarily then, the existence of such a comprehensive remedy to address plaintiff's claim of improper payment in this case precludes a common-law negligence claim against either party. "Only in very rare instances should a court upset the legislative scheme of loss allocation and permit a common-law cause of action." *Bank Polska Kasa Opieki v. Pamrapo Savings Bank,* 909 *F.Supp.* 948, 956 (D.N.J.1995); *see also Girard Bank v. Mount Holly State Bank,* 474 *F.Supp.* 1225, 1239 (D.N.J.1979) (noting that "[c]ourts should be hesitant to improvise new remedies outside the already intricate scheme of Articles 3 and 4."); *see also New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.,* 690 *F.*2d 339, 345 (3d Cir.1982) (a common-law tort action is barred where Article 8 provides a "comprehensive remedy").

Plaintiff nevertheless relies on the *City Check Cashing* case for the proposition that the UCC does not disallow all common-law negligence claims. 166 *N.J.* at 59, 764 *A.*2d 411. While this may be so generally speaking, we need not here set the boundaries of the proposition because this matter, in which plaintiff has recourse under the UCC for its claims that GE Capital erroneously pre-

sented the negotiable instrument and Fleet improperly debited plaintiff's account, clearly falls outside. Indeed, the Court in *City Check Cashing* explicitly held:

In . short, in the check collection arena, unless the facts establish a special relationship between the parties created by agreement, undertaking or contact, that gives rise to a duty, the *sole remedies available are those provided in the Code.*

[*City Check Cashing, supra,* 166 *N.J.* at 62, 764 *A.*2d 411 (emphasis added).]

Here, there is no "special relationship" between plaintiff and GE Capital from which a common-law duty arises, and none is claimed.

■ Having then identified no legally cognizable common-law right of action against either defendant, plaintiff is thus left with its remedy under the UCC, which happens to be barred because beyond the UCC's three-year statute of limitations. Nevertheless plaintiff argues, alternatively, that it is not time-barred under the three-year limitation period because under the "discovery rule", its cause of action did not accrue until 2002 when the check discrepancy was discovered. We disagree. The clear weight of authority in this State and others holds that the "discovery rule" does not apply to this type action.

In *Pace,* an attorney misappropriated her clients' funds "by forging their endorsements on settlement checks" and Summit Bank "accept[ed] the forged ... checks for deposit." *Pace, supra,* 374 *N.J.Super.* at 59, 863 *A.*2d 402. The New Jersey Lawyers' Fund for Client Protection (Fund), which reimbursed the attorney's clients for their losses and obtained assignments of rights from them, sought reimbursement in turn from Summit for conversion of negotiable instruments. Although the Fund's action was filed out-of-time under the UCC's three-year statute of limitations for such claims, *N.J.S.A.* 12A:3–118(g), the Fund argued that its claim did nor accrue until "discovery" of the conversion. We disagreed and held that a "cause of action against a bank in a conversion action with respect to negotiable instruments accrues at the time of conversion, and that the time of discovery rule does not apply under the UCC." *Pace, supra,* 374 *N.J.Super.* at 67, 863

*A.*2d 402. On certification, the Supreme Court accepted that general statement of the law, "which is followed by a majority of the jurisdictions that have considered the question." *New Jersey Lawyers' Fund For Client Protection v. Pace,* 186 *N.J.* 123, 125, 892 *A.*2d 661 (2006).

Although plaintiff would limit our opinion in *Pace* narrowly to actions under Article 3 for forgery and check alteration, *N.J.S.A.* 12A:3–118(g), and not to claims of mere negligence, no such qualifying language appears therein, and we discern no reason to distinguish, for present purposes, intentional wrongdoing from simple error. Indeed, if as in *Pace,* an unsuspecting victim of forgery is bound by the strict application of the UCC's three-year limitations period, we see no reason in law or policy to extend any greater protection in this instance to plaintiff, whose claim is grounded only in negligence.

Moreover, the official comment to *N.J.S.A.* 12A:4–111 explicitly links these two articles of the UCC, indicating that "section [4–111] conforms to the period of limitations set forth by Section 3–118(g) for actions for breach of warranty and to enforce other obligations, duties or rights arising under Article 3." Furthermore, Sections 4–111 and 3–118(g) each contain the phrase "after the cause of action accrues", which we did not interpret in *Pace* as indicative of legislative intent that the discovery rule should apply. *Pace, supra,* 374 *N.J.Super.* at 61, 863 *A.*2d 402. On the contrary, both sections were enacted as part of the 1995 amendments to the UCC, and we noted in *Pace* that with those amendments "the importance of uniformity in the UCC's application again came to the forefront" and that our holding comported with the vast majority of states declining to apply the discovery rule to actions against banks for conversion of negotiable instruments. *Id.* at 64–65, 65 n. 7, 863 *A.*2d 402 (listing several decisions in accord from states nationwide). Thus, limiting *Pace's* holding as plaintiff suggests would contravene legislative intent to unify New Jersey commercial law with the majority nationwide, as well as to simplify and harmonize the law of bank deposits and negotiable instru-

ments. *See Pace, supra,* 186 *N.J.* at 125, 892 *A.2d* 661. As the Court noted with approval, "The application of the discovery rule to negotiable instruments would be inimical to UCC policies of finality and negotiability." *Ibid.* (quoting *Menichini v. Grant, supra,* 995 *F.*2d at 1230). We therefore conclude the discovery rule does not apply in this instance.

 Even if available to toll the statute of limitations, we find that the discovery rule would not inure to plaintiff's benefit in this particular instance. The discovery rule is "an equitable exception to the general rule that the statute of limitations begins to run when the cause of action accrues." *Sebastian, supra,* 61 *F.Supp.*2d at 389 n. 2. It provides that " 'in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.' " *Burd v. New Jersey Telephone Co.,* 76 *N.J.* 284, 287, 386 *A.2d* 1310 (1978) (quoting *Lopez v. Swyer,* 62 *N.J.* 267, 272, 300 *A.2d* 563 (1973)). Here, plaintiff was well-positioned to timely discover the discrepancy between the amount for which the check was drafted and the amount for which it was negotiated, especially since it was in possession of both the cancelled check and the October 1998 bank statement showing that the incorrect amount was debited from the IOLTA account, shortly after the instrument was negotiated. Just as significant, plaintiff was under a mandatory duty imposed by court rule to monitor its attorney trust account and to reconcile on at least a monthly basis "the cash balance derived from the cash receipts and cash disbursement journal totals, the checkbook balance, the bank statement balance and the client trust ledger sheet balances...." *R.* 1:21–6(c)(1)(H). Clearly, through the exercise of reasonable diligence, the discrepancy would have been discovered within a month or two of October 1998. We are satisfied that plaintiff's failure to exercise reasonable diligence in this instance precludes its reliance on the discovery rule and consequently, for the reasons already stated, its action against defendants is time-barred.

The order of judgment of the Special Civil Part is reversed.