**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3607-23

IN THE MATTER OF
THE ESTATE OF
WAGUIH H. GUIRGUESS.

_____

Submitted October 2, 2025 – Decided December 12, 2025

Before Judges Bishop-Thompson and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-000372-22.

Cosner Law Group, attorneys for appellant David Guirguess (Rebecca A. Hand, on the briefs).

O'Toole Scrivo, LLC, attorneys for respondent Manar W. Doukali (Laura V. Studwell and Nicholas P. Whittaker, of counsel and on the brief).

PER CURIAM

    Appellant David Guirguess[1] (David) appeals from provisions of the June 12, 2024 Probate Part order voiding a deed transferring property to him and

---

[1] Consistent with the trial court opinion, we refer to the parties by their first names. No disrespect is intended.

deeming certain funds part of the estate of Waguih H. Guirguess (Waguih). We reverse and remand.

I.

Waguih and his first wife Samia had three children: Manar W. Doukali (Manar), David, and Peter Guirguess (Peter). After Waguih and Samia divorced in 1978, Waguih had primary custody of the children. Waguih purchased a residence in Brick (the Brick property) in December 1989.

In 1997, Waguih and Peter, who was still a minor, were named as defendants in a personal injury lawsuit arising from Peter's engaging in a fight at his middle school. Waguih was concerned the Brick property would be at risk if a judgment were entered against him and, on December 27, 2000, shortly before the matter was scheduled for trial, executed a deed (the Brick deed) transferring the property to David for $125,000. After the lawsuit settled in March 2001, David did not transfer the Brick property back to Waguih.

During trial in this probate matter, David testified Waguih deeded the property to him as a gift. He said the property remained in his name and he managed rentals, made improvements, and paid expenses out of his own pocket for the next twenty years. He conceded he did not pay any money at the time of the transfer and did not execute a loan or mortgage agreement with Waguih, but

2

asserted he had an oral agreement to pay Waguih ten years' rent instead of a lump sum. David also borrowed against the Brick property, taking out a $30,000 mortgage in 2002 and a $99,000 home equity line of credit in 2004.

Contrary to David's narrative, both Manar and Peter testified the Brick deed was not a gift or bona fide sale. Both siblings described multiple family meetings, including one with a priest, during which Waguih demanded David return him title to the Brick property. Peter estimated his father requested the return of the property between five and ten times. Manar testified that at Waguih's request in 2019, she had deeds prepared to transfer the Brick and Freehold properties[2] from David to Waguih, but David refused to sign the deeds and tore them up in front of the family.

Waguih had both checking and savings accounts with USAA. David, a veteran, was listed as a joint owner on those accounts. Waguih's pension, social security, rental income, and tax refunds were deposited into the USAA accounts.

---

[2] In 2015, David purchased a Freehold townhome (the Freehold property), which Waguih was renting. David produced documentation he transferred funds from his account for the purchase of the Freehold property. Manar testified Waguih paid for the townhome, but he wanted David on the deed so Waguih's second wife and her children would not inherit the property. The Freehold property is not at issue in this appeal.

A-3607-23

In 2020, David began transferring money from the USAA accounts into his own. Evidence at trial showed transfers of: $80,000 on February 24, 2020; $100,000 on February 18, 2021; and $9,034.70 on December 28, 2021, for a total of $189,034.70. Manar testified none of these funds were returned to Waguih's accounts. David averred he returned $80,000 and produced a bank statement showing an $80,000 transfer from his personal account to the USAA checking account on February 5, 2021. In an exchange with counsel, the trial court confirmed the bank statement evidencing the $80,000 transfer, and David's post-trial submission noted the repayment.

After his retirement, Waguih experienced a significant health decline and Manar became his primary caretaker. Peter also lived with Waguih at various times as an adult, including during the COVID-19 pandemic when they shared the Freehold property for several months. Peter testified he had "always been very close" with his father into adulthood. He also testified there were disputes between the siblings concerning money and property ownership during Waguih's later years.

In 2005, Waguih executed a last will and testament naming Manar as executor, leaving his interest in a company to Manar's then-husband, a property in Fair Lawn to Manar's children, and the residuary estate equally among his

4

children.  He also executed a general power of attorney designating Manar as his agent, but she did not use this authority until Waguih became ill.

Both Manar and Peter testified Waguih's longstanding, consistent intent was to divide his estate equally among his three children, regardless of how title to an asset was held.  They stated Waguih's wishes were a recurring theme in family discussions.  David, on the other hand, acknowledged his father "loved all of his kids," but contended the assets titled in his name were non-estate property.

## II.

Waguih died on March 4, 2022.  On October 5, 2022, Manar, as executor of Waguih's estate, filed a verified complaint against David alleging improvident gifts, fraud, conversion, and unjust enrichment.  She sought compensatory and punitive damages, injunctive relief, a lis pendens on the Freehold and Brick properties, and other relief.  David's answer included a separate defense of statute of limitations and his counterclaim alleged fraud, conversion, improvident gifts, unjust enrichment, conversion of real property, and trespass. He sought an accounting, compensatory and punitive damages, and other relief.

In his opening statement at trial, David's counsel argued the relief sought by Manar was barred by the statute of limitations:

5

[Manar] is attempting to retake possession or title to assets owned by David. The first asset is a property that was transferred to David by deed from Waguih on December 27, 2000. David will give testimony that that was a gift from Waguih, and pursuant to the arrangement of the gift, David was to transfer . . . half the rental income from that property to a joint account for ten years. Because the transfer occurred so long ago, under any cognizable legal claim that can be raised by [Manar], including the causes of action in [her] complaint, the statute of limitations has long since expired, and the discovery rule does not apply because Manar and both Peter—

The court interrupted counsel, asking why he did not file a dispositive motion on the issue. Counsel replied: "At the time we filed our . . . amended answer we did not know that this transfer had occurred at that time. And so at that point it was too late." The court then directed Manar to call her first witness, and the trial proceeded.

After considering the testimony of all three siblings, the court issued an oral decision on June 12, 2024. It did not address David's statute of limitations argument and instead ruled on the merits of the claims. The court found David's testimony regarding the Brick property as "too much of a moving target to be credible," noting David shifted his explanations for the transfer—first calling it a gift, then claiming it was a private mortgage, and then terming it a management arrangement. David never paid the $125,000 noted in the Brick deed and twice

6

mortgaged the property while asserting he did not fully own it. The court also referenced a prior unrelated litigation wherein David admitted under oath he falsified records.

Relying on the testimony of Peter and Manar, which it found credible, the court found Waguih intended his children to share equally in his residual estate, and Waguih's transfer of the Brick property to David was a temporary shield against a lawsuit, rather than a permanent gift or other financial arrangement. Thus, exercising its equitable power, the court voided the Brick deed and declared the property part of Waguih's estate.[3]

Next, the trial court determined the funds deposited into the joint USAA accounts belonged to Waguih, and David had no authority to transfer $189,034.70 from those accounts. The court concluded David took advantage of his father's diminished capacity and wrongfully redirected estate assets to himself to circumvent the intent of Waguih's will. Thus, the court deemed those funds assets of the estate.

---

[3] Because the court voided the deed, it did not compel David to transfer title of the property to the estate.

On appeal, David argues the trial court erred because Manar's challenge to the Brick transfer was barred by the statute of limitations and the order failed to consider documentary evidence showing David returned $80,000 to Waguih's USAA account. We first address the statute of limitations issue.

"Our review of a trial judge's decision as to the applicable statute of limitations is plenary and de novo" when the facts are uncontested or on the pleadings. Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat'l Bank, 390 N.J. Super. 199, 203 (App. Div. 2007); see Doe v. Est. of C.V.O., 477 N.J. Super. 42, 54-55 (App. Div. 2023). However, when review rests on disputed facts, we give deference to the trial court's fact-finding, provided the court made adequate findings of fact. See, e.g., LVNV Funding, LLC v. Deangelo, 464 N.J. Super. 103, 106-08 (App. Div. 2020).

Because the Brick deed was dated December 27, 2000 and recorded on January 25, 2001, and the complaint was filed October 5, 2022, David asserts the statute of limitations bars Manar's claim to void the transfer. He maintains the six-year statute of limitations applies here pursuant to N.J.S.A. 2A:14-1(a). In addition, David contends N.J.S.A. 2A:14-6 and -7, which provide a twenty-year statute of limitations for right or title of entry to real estate and every action

at law regarding real estate, respectively, bar the claim seeking to void the Brick deed. David further highlights Waguih did not file an action to void the Brick deed during his lifetime.

Pointing to Williams v. Bell Telephone Laboratories, Inc., 132 N.J. 109, 118-20 (1993), Manar argues David waived the statute of limitations defense. In Williams, our Supreme Court affirmed the trial court's denial of the defendant's post-verdict statute of limitations motion because the defendant's "mere one-time mention of the statute" did not "preserve that otherwise-unasserted defense through the entire three-and-one-half-year span of the litigation, through preparation for and conduct of a protracted trial, and into a post-verdict submission, in the course of which both parties undoubtedly expended large amounts of time, money, and energy." Id. at 119-20.

Unlike the defendant in Williams, David pleaded the statute of limitations as a separate defense in his answer, raised the issue at the inception of trial, and argued the bar in his post-trial submission. The trial court, however, did not address the issue in its decision, instead exercising its equitable power to void the deed. It is unclear whether the court deemed the statute of limitations defense waived, rejected it on the merits or, as Manar argues, granted relief in its equitable power notwithstanding the statute of limitations.

9

Pursuant to Rule 1:7-4(a), "[t]he court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right." See also R. 1:6-2(f). Because the trial court did not explain why it rejected David's statute of limitations argument, we are constrained to reverse the provisions of the order regarding the Brick property and remand for further consideration.

We are also convinced the court mistakenly used its discretion in disregarding David's repayment of $80,000 to Waguih's account. Although the court found David "agreed to transfer those sums back but never did," the court did not address the bank statement in evidence showing an $80,000 transfer from David's account to Waguih's account. Manar argues David's testimony was generally not credible, but that assessment does not explain the court's rejection of the bank statement. While there may be a sound reason the court did not credit David the $80,000 repayment, we are unable to discern it on this record. We therefore reverse that portion of the order and remand for further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

10                                                      A-3607-23