PALMER MANUFACTURING AND SUPPLY, INC.,
f.k.a. Palmer Foundry, Inc., Appellant,

v.

BANCOHIO NATIONAL BANK, n.k.a. National City Bank, Columbus, Appellee.

[Cite as *Palmer Mfg. & Supply, Inc. v. BancOhio
Natl. Bank* (1994), 93 Ohio App.3d 17.]

Court of Appeals of Ohio,
Clark County.

No. 3021.

Decided Feb. 4, 1994.

---

*Jerry A. Meadows,* for appellant.

*Barry P. Reich,* for appellee.

BROGAN, Judge.

Appellant, Palmer Manufacturing & Supply, Inc., f.k.a. Palmer Foundry, Inc. ("Palmer"), appeals from the decision of the Clark County Court of Common Pleas granting summary judgment to appellee, BancOhio National Bank, n.k.a. National City Bank, Columbus ("Bank").

The underlying facts and procedural history of the case are as follows. Constance Winkle was an employee of Palmer with authority to transact business on its behalf. Winkle's authority was allegedly restricted to depositing checks and other instruments payable to Palmer into Palmer's account with Bank.

In January 1986, Winkle opened a personal account at Bank entitled "Echo Rental Account" apparently to accommodate her embezzlement of Palmer funds. Specifically, between January 21, 1986 and July 2, 1986, Winkle deposited numerous checks payable to Palmer into her Echo Rental account. She endorsed the back of the checks "Palmer Manufacturing" and then wrote in her own Echo Rental account number. The checks were credited to Winkle's account instead of Palmer's. Winkle embezzled somewhere between $21,000 and $25,000 from Palmer in this manner. Winkle was eventually discovered and imprisoned.

On February 21, 1990, Bank received a letter from Kenneth M. Elder, Palmer's former attorney. The letter stated that Palmer had discovered the theft of its funds in April 1989, and that Palmer's position was that Bank was liable for statutory conversion for payment of the checks on forged endorsements pursuant to R.C. 1303.55(A)(3).

On February 10, 1992, well over two years after its discovery of Winkle's activities and almost six years after the last forgery, Palmer filed a complaint against Bank, alleging that Bank had improperly paid on the instruments forged by Winkle. Bank filed for summary judgment, arguing that Elder's letter

constituted a "claim" for improper payment of the checks forged by Winkle under R.C. 1304.29, and that Palmer's cause of action was filed beyond the one-year statute of limitations of R.C. 1304.29(F).

The trial court granted Bank's motion for summary judgment on the grounds that Palmer's action was untimely and thus barred by the one-year statute of limitations of R.C. 1304.29(F). This appeal followed.

Palmer advances one assignment of error: "The statute of limitations for an action under the Uniform Fiduciary Law is four years, as set forth in Ohio Revised Code Section 2305.09, rather than one year, as set forth in Ohio Revised Code Section 1304.29(F)."

Before we reach the issue of which limitations period actually applies in this case, we conclude for the following reasons that the trial court erred in applying the one-year statute of limitations set forth at R.C. 1304.29(F).

R.C. 1304.29(A) provides:

"When a bank sends to its customer a statement of account accompanied by *items* paid in good faith in support of the debit entries * * *, the customer must exercise reasonable care and promptness to examine the statement and *items* to discover his unauthorized signature or any alteration on an *item* and must notify the bank promptly after discovery thereof." (Emphasis added.)

R.C. 1304.29(F) then provides as follows:

"An action against a bank arising out of an unauthorized signature or indorsement of *the item* must be brought within one year after the customer has notified the bank of his claim as required by the provisions of this section." (Emphasis added.)

We agree with Palmer that the "item" referred to in paragraph (F) must be interpreted with reference to "items" paid in good faith accompanying a statement of account sent by a bank to its customer referred to in paragraph (A). The checks wrongfully deposited by Winkle into her account established with Bank do not constitute "items" within the meaning of R.C. 1304.29. These checks were not items which would ever have accompanied a statement of account from Bank to Palmer. Rather, these checks were checks of Palmer's customers which would have accompanied the individual customers' statements of account from their respective financial institutions.

In other words, Palmer could never have discovered the forgeries from a perusal of its own statement of account from Bank, since none of the checks forged by Winkler was returned therein. Thus, the forged checks were not "items" as defined in R.C. 1304.29 and the statute of limitations specified in R.C. 1304.29(F) has no application to the facts of this case.

That leaves us to determine what statute of limitations is applicable. When a statute-of-limitations argument is raised in the trial court, a reviewing court may consider all aspects of that argument and all available statutes in order to chose the one which best applies to the facts of the case. *Lawyer's Co-op Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 275–276, 603 N.E.2d 969, 971–972.

Palmer argues that the four-year statute of limitations at R.C. 2305.09(B) should apply and assumes that such statute began to run upon Palmer's discovery of the check forgeries in 1989. Bank contends that if the one-year statute of R.C. 1304.29 does not apply, then Palmer's complaint is time-barred by the two-year statute of limitations for injury to personal property set forth at R.C. 2305.10.

In order to determine the applicable statute of limitations, we must first properly characterize the nature of the underlying cause of action. In *United Home Life Ins. Co. v. Bellbrook Bank* (1988), 50 Ohio App.3d 53, 552 N.E.2d 954, on facts practically identical to those in the present case, we held that an endorsement of a check by an agent of the payee who expressly lacks authority to endorse checks is a forged endorsement, and payment on the endorsement by the bank is a conversion of the check pursuant to R.C. 1303.55(A)(3), the Ohio counterpart to UCC 3–419(1)(c). See, also, *Morris v. Ohio Cas. Ins. Co.* (Dec. 23, 1986), Franklin App. No. 86AP–739, unreported, 1986 WL 14865. Yet, because neither the Revised Code nor the UCC specifies the statute of limitations applicable when there is a conversion of commercial paper, we must look elsewhere for an appropriate statute.[1] See Anderson, Uniform Commercial Code (3 Ed.1993) 60, Section 3–419:6.

R.C. 2305.09 states in pertinent part:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

" * * *

"(B) For the recovery of personal property, or for the taking or detaining it * * *."

This court has applied the four-year limitations period set forth at R.C. 2305.09(B) to actions for common-law conversion. *Beaver v. Raybourne* (June 23,

---

1. The Revised UCC (RUCC), not yet adopted in Ohio, includes, *inter alia,* a three-year statute of limitations for conversion, RUCC Section 3–118(g)(1), and a loss-allocation provision dealing directly with employer responsibility for fraudulent endorsement by an employee, RUCC Section 3–405. RUCC leaves tolling issues to other law. See Uniform Commercial Code (1991), Section 3–118, Comment 1, 2 U.L.A. 45 ("the circumstances under which the running of a limitations period may be tolled is [*sic* ] left to other law pursuant to Section 1–103").

1988), Miami App. No. 83–CA–34, unreported, 1988 WL 66930 ("Conversion is an action at law which clearly falls under R.C. 2305.09[B]."). See, also, *Abraham v. Natl. City Bank Corp.* (1990), 50 Ohio St.3d 175, 177, 553 N.E.2d 619, 621. In the absence of a specific statute to the contrary, we see no reason to conclude that the conversion of an instrument under R.C. 1303.55(A)(3) should have a different limitations period than any other tort action for conversion. See *Menichini v. Grant* (C.A.3, 1993), 995 F.2d 1224, 1229, fn. 6; *Mintz v. United States* (D.N.J. 1980), 29 U.C.C.Rep.Serv. 1325, 1980 WL 98472; Hawkland, Uniform Commercial Code Series (1984) 814, Section 3–419:10 ("The statute of limitations for any action for conversion of an instrument is the same as for any tort action for conversion." Citations omitted.)

██ Having determined that the four-year statute applies, we must now determine when the statute began to run. Palmer filed suit on February 10, 1992. Both parties appear to assume that whatever the applicable statute, it began to run when Palmer first discovered the check forgeries in April 1989, in which case Palmer's claim against Bank is not barred by the statute of limitations. If the statute began to run when Bank paid on the forged instruments in 1986, however, Palmer's claims against Bank would be barred by the four-year statute. R.C. 2305.09(B).

██ The parties have not cited, nor have we found, any Ohio cases applying the discovery rule [2] to the conversion of an instrument. We have found no Ohio case which addresses this specific matter, although Ohio courts have long held that the statute begins to run on common-law conversion at the time of the conversion, unless the fact of the conversion was fraudulently concealed from the plaintiff. *Klein v. Linn* (App.1931), 10 Ohio Law Abs. 560. Faced with a question of first impression involving the UCC, we must look to other jurisdictions for guidance.

Although a few courts apply the discovery rule to negotiable instrument theft on essentially equitable grounds, see *DeHart v. First Fid. Bank* (D.N.J.1986), 67 B.R. 740, 743–746; *Stjenholm v. Life Ins. Co. of N. Am.* (Colo.App.1989), 782 P.2d

---

2. The discovery rule is an equitable exception to the general rule that the statute of limitations begins to run as soon as the underlying cause of action accrues. *Wyler v. Tripi* (1971), 25 Ohio St.2d 164, 166, 54 O.O.2d 283, 284–285, 267 N.E.2d 419, 420. Under the general rule, lack of knowledge, mistake or misunderstanding does not toll the running of the statute of limitations. Cf. *id.* The discovery rule, which arises from the inability of the injured party, despite his exercise of due diligence, to know of the injury or its cause, provides that the statute of limitations begins to run as soon as the plaintiff knows, or reasonably should have known, that he has been injured by the conduct of another party. See *Clutter v. Johns–Manville Sales Corp.* (C.A.6, 1981), 646 F.2d 1151, 1153 (citing R.C. 2305.10).

810, the great bulk of authority runs very strongly against this approach. See, *e.g., Menichini v. Grant* (C.A.3, 1993), 995 F.2d 1224; *Kuwait Airways Corp. v. Am. Sec. Bank* (C.A.D.C.1990), 890 F.2d 456; *First Investors Corp. v. Citizens Bank, Inc.* (W.D.N.C.1991), 757 F.Supp. 687, 690–692; *Husker News Co. v. Mahaska State Bank* (Iowa 1990), 460 N.W.2d 476, 477–478; *Wang v. Farmers State Bank of Winner* (S.D.1989), 447 N.W.2d 516, 518–519; *Fuscellaro v. Indus. Natl. Corp.* (1977), 117 R.I. 558, 562–564, 368 A.2d 1227, 1231; *Lyco Acquisition 1984 Ltd. Partnership v. First Natl. Bank of Amarillo* (Tex.App.1993), 860 S.W.2d 117; *Ins. Co. of N. Am. v. Mfr's Bank of Southfield, N.A.* (1983), 127 Mich.App. 278, 282–284 338 N.W.2d 214, 216; *Continental Cas. Co. v. Huron Valley Natl. Bank* (1978), 85 Mich.App. 319, 324–327, 271 N.W.2d 218, 221; *Southwest Bank & Trust Co. v. Banker's Commercial Life Ins. Co.* (Tex.Civ.App. 1978), 563 S.W.2d 329, 331; *Gerber v. Mfrs. Hanover Trust Co.* (1970), 64 Misc.2d 687, 688–689, 315 N.Y.S.2d 601, 603; Hawkland, Uniform Commercial Code Series (1984) 814, Section 3–419:10 (the cause of action should accrue when the act of conversion occurred). Where a party not engaging in fraudulent concealment asserts the statute of limitations defense, most courts have refused to apply the discovery rule to negotiable instruments, finding it contrary to UCC policies of finality and negotiability.

The Iowa Supreme Court's analysis in *Husker News Co. v. Mahaska State Bank* (Iowa 1990), 460 N.W.2d 476, illustrates this approach. There, on facts similar to those in the present case, the court refused to apply the discovery rule to a Section 3–419 conversion action based on a forged endorsement. Plaintiff Husker's employee, Hopf, collected customer payments, forged Husker's endorsement on the checks, and deposited the funds in his personal account. As in the present case, Husker never saw the forged endorsements because the checks were routed to the various drawee banks and back to the customers in their respective statements. Husker did not discover the theft until after the Iowa statute of limitations had run. When the defendant bank asserted a statute of limitations defense, Husker asserted the discovery rule claiming that Hopf's fraudulent concealment prevented discovery.

Based on the UCC objectives of predictability and finality in commercial transactions, the Iowa Supreme Court refused to apply the discovery rule to the law of commercial paper. The court, declining to elevate "the rights of unsuspecting victims of forgery over the broader interests of the commercial world," stated as follows:

"As tempting a choice as that may be in an individual case, we think the public would be poorly served by a rule that effectively shifts the responsibility for

careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitations period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and 'certainty of liability' advanced by the UCC." *Id.*, 460 N.W.2d at 479.

Accordingly, the court held the discovery rule inapplicable to conversion actions under UCC 3–419(1)(c).

We find this approach convincing and believe that it advances the UCC objectives of negotiability, finality, and uniformity in commercial transactions. See *Menichini, supra.* We also believe that four years is ample time for a prudent business or individual, exercising due diligence, to discover a forgery and bring an action for conversion.[3] See *Kuwait Airways Corp., supra* (ordinary business should detect embezzlement within three-year limitations period).

■ Thus, we hold that in the absence of fraudulent concealment by the defendant invoking the statute-of-limitations defense, a cause of action for conversion of negotiable instruments accrues when, irrespective of the plaintiff's ignorance, the defendant wrongfully exercises dominion. As there is no evidence that Bank engaged in fraudulent concealment, Palmer's claims against Bank for conversion in relation to the 1986 forgeries are barred by the statute of limitations. R.C. 2305.09(B).

In light of the foregoing, the judgment of the Clark County Court of Common Pleas will be affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.

---

3. In this case, Palmer did, in fact, discover the forgeries within the applicable limitations period but simply failed to bring its action until after the limitations period had run.