OPINION *Page 2 
{¶ 1} Although originally placed on our accelerated calendar, we have elected pursuant to Loc. R. 12(5) to issue a full opinion in lieu of a summary journal entry.
 {¶ 2} Plaintiff-appellant, Gerald Dibert ("Dibert"), appeals the Logan County Court of Common Pleas' judgment granting a motion to dismiss filed by defendant-appellee, Timothy Todd Watson ("Executor"), Executor of the Estate of Roger L. Watson ("Watson"). For the reasons that follow, we affirm.
 {¶ 3} On July 11, 2008, Dibert filed a $440,000 claim against the Estate of Roger L. Watson, which the Executor rejected in full pursuant to R.C. 2117.11. (Doc. No. 1, Ex. 5). On September 19, 2008, Dibert filed a complaint against the Executor in the Logan County Court of Common Pleas. (Doc. No. 1). The complaint alleged, in pertinent part, that in 1991 Watson performed estate planning for Dibert's father, who died in 1993. (Doc. No. 1, at ¶ 2). The complaint also alleged that Watson was in possession of funds, personal property, and documents belonging to the estate and trust of Dibert's father. (Id. at ¶ 3). According to the complaint, during the course of the estate planning, Watson represented to Dibert and his father that Attorney John Scouten of Toledo, Ohio had authorized him to draft wills, trusts, and other legal documents. (Id. at ¶ 4). However, Watson never informed Dibert or his father that he was disbarred from *Page 3 
the practice of law, and Dibert and his father believed that the legal documents were created under the direction of an attorney. (Id. at ¶ 5). The complaint alleged that Watson was paid to draft a will and a trust for Dibert's deceased father, and that Watson told Dibert that only he could give advice on the operation of the trust and authorize trust transactions. (Id. at ¶¶ 6-8).
 {¶ 4} According to the complaint, farmland was placed into the Kenneth A. Dibert trust on June 27, 1991. (Id. at ¶ 11); (Doc. No. 1, Ex. 4). The complaint further alleged that the trust provided Dibert with the option of purchasing the remainder of farm chattels (grain, livestock, etc.) and land if their value was more than fifty-percent of the trust's overall distribution. (Doc. No. 1, at ¶ 12). The value of the land was that established for Ohio Estate Tax purposes, which was $773,700. (Id.). Dibert's option to buy the farmland and chattels, however, was limited to ninety (90) days after the donor's (his father's) death. (Id.). According to the complaint, Dibert made arrangements to purchase the farmland and chattels within ninety days, but Watson, with the purpose of defrauding him, told him that he could not purchase the land until the death of the trust's primary beneficiary, Amelia Jane Dibert (plaintiffs mother). (Id. at ¶¶ 13-14). The complaint also alleged that Watson and Attorney Scouten told Dibert that the option would remain in effect until the death of Amelia Jane Dibert. (Id. at ¶ 15). Dibert allegedly relied upon Watson's advice that he could purchase the land at the option price of $773,700 (less $88,000 that he had already paid to purchase a 57.5 *Page 4 
acre portion of the land) whenever his mother died, because Watson had falsely represented that he was authorized to give legal advice. (Id. at ¶ 16).
 {¶ 5} The complaint further alleged that Watson failed to reveal to Dibert that the Pickering Trust, created by Kenneth Dibert's maternal grandfather for the benefit of his widow, with Dibert and his sister Sue Dibert Carpenter as remainder beneficiaries, held a mortgage on the farmland. (Id. at ¶ 17). Dibert again relied upon Watson's advice when the Pickering trust demanded that the farm be conveyed to it since the Dibert trust had not paid all its debts to the Pickering trust. (Id. at ¶ 18). An agreement was reached whereby the deed conveying the farmland from the Dibert trust to the Pickering trust would have a paragraph in its margin that read: "This conveyance is subject to the right to purchase the above described real estate granted to Gerald A. Dibert as set forth in the Kenneth A. Dibert Trust, dated March 12 1991." (Id.).
 {¶ 6} The complaint ultimately alleged that because of Watson's false representation that he was able to give legal advice, Dibert was unable to purchase the property and has lost the land's appreciated value. (Id. at ¶¶ 19-20). The complaint alleged further that Watson made this false statement with the intent to defraud Dibert so he could continue to manage the trust and generate fees for his legal advice. (Id. at ¶¶ 19-22).
 {¶ 7} On October 21, 2008, the Executor filed a motion to dismiss pursuant to Civ. R. 12(B)(6) alleging that the complaint was filed outside *Page 5 
R.C. 2117.06's six-month statute of limitations. (Doc. No. 9). On November 17, 2008, Dibert filed a memorandum in opposition to the motion to dismiss alleging that his claim was contingent; and therefore, R.C. 2117.37's one-year statute of limitation applied. (Doc. No. 12). On December 16, 2008, the trial court dismissed the case, in part, finding that Dibert's tort claims of fraud and intentional interference with an inheritance were time-barred under R.C. 2117.06, but Dibert's claim for recovery of assets belonging to Kenneth A. Dibert or his estate were not time-barred. (Doc. No. 15). The trial court further found that there was no just cause for delay. (Id.).
 {¶ 8} On January 9, 2009, Dibert filed a notice of appeal. (Doc. No. 24). Dibert now appeals and raises one assignment of error for our review.
 ASSIGNMENT OF ERROR THE COURT ERRED IN GRANTING DEFENDANT'S MOTION TO DISMISS BASED ON OHIO CIVIL RULE 12(B)(6), FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.
 {¶ 9} In his sole assignment of error, Dibert argues that the trial court erred in dismissing his claim. Specifically, Dibert alleges that his fraud claim did not accrue until October 9, 2008, after Watson's death, when a court declared that the deed language purporting to protect his interest in the farmland was "a nullity and conferred no rights upon the Plaintiff Dibert"; and therefore, his claim was timely under R.C. 2117.37 as a contingent claim. Dibert also argues that he was *Page 6 
not a "creditor" within the meaning of R.C. 2117.06 until his cause of action for fraud accrued, when he discovered it in October 2008. Dibert acknowledges that a cause of action generally accrues when the wrongful act is committed, but suggests that `fairness' requires application of the discovery rule in this case. Dibert also appears to suggest that Civ. R. 12(B)(6) is inappropriate for dismissing claims based upon a statute of limitations.
 {¶ 10} Dibert's arguments lack merit. To begin with, a Civ. R. 12(B)(6) motion is appropriate when it is clear from the face of the complaint that the claim is time-barred. Doe v. Archdiocese of Cincinnati,109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 10, citingVellotta v. Leo Petronzio Landscaping, Inc. (1982), 69 Ohio St.2d 376,433 N.E.2d 147. See, also, Love v. City of Port Clinton (1988),37 Ohio St.3d 98, 524 N.E.2d 166; Vandemark v. Southland Corp. (1988),38 Ohio St.3d 1, 7, 525 N.E.2d 1374; Mills v. Whitehouse Trucking Co. (1974),40 Ohio St.2d 55, 320 N.E.2d 668. R.C. 2117.06(C) provides, in pertinent part, that "* * * a claim that is not presented within six months after the death of the decedent shall be forever barred as to all parties * * *" (emphasis added). The face of the complaint states that Watson died on July 14, 2007, and that Dibert filed a claim with the estate on July 11, 2008. (Doc. No. 1, ¶ 1). Therefore, if R.C. 2117.06 applies, a Civ. R. 12(B)(6) motion was appropriate because it is clear from the face of the complaint that Dibert filed his claim more than six months after Watson's death. *Page 7 
 {¶ 11} Dibert's complaint stated causes of action in fraud and intentional interference with an inheritance, which are torts. See, e.g., McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236,659 N.E.2d 317 (fraud); Firestone v. Galbreath (1993), 67 Ohio St.3d 87,616 N.E.2d 202 (intentional interference with an inheritance). R.C. 2117.06(C)'s six-month statute of limitations applies to:
 (A) All creditors having claims against an estate, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated * * *
(Emphasis added). Since Dibert alleged claims arising out of tort, R.C. 2117.06(C)'s six-month statute of limitations applies, and the trial court did not err in dismissing the complaint.
 {¶ 12} In an effort to avoid R.C. 2117.06's six-month statute of limitations, Dibert argues that his claims of fraud and intentional interference with an inheritance are `contingent' as that term is used in R.C. 2117.37. Dibert reasons that, as contingent claims, they are subject to R.C. 2117.37's one-year statute of limitations, which he satisfied. We disagree that Dibert's claims are contingent. As this Court has explained before, "[a] contingent claim is one in which the liability thereon is `dependent upon some uncertain future event which may or may not occur.'" In re Estate of Bickham (1993),85 Ohio App.3d 634, 637, 620 N.E.2d 913, quoting Pierce v. Johnson (1939),136 Ohio St. 95, 98, 23 N.E.2d 993. Dibert alleged that Watson falsely represented that he was "fully and legally *Page 8 
able to give advice on wills, trusts, and the operations of trusts because he was working with Attorney John Scouten, his brother-in-law" in order to defraud him and generate legal fees. (Memo Contra to Civ. R. 12(B)(6) Motion, Doc. No. 12 at 5-6); (See, generally, Complaint, Doc. No. 1). If Dibert's allegations against Watson are true, however, Watson became liable sometime between 1991 and 1994, when Dibert was relying upon Watson for legal advice, and Watson was generating the legal fees. There was no further "uncertain future event that may or may not occur" to trigger liability on the claim. Therefore, we cannot conclude that Dibert's claim was contingent for purposes of R.C. 2117.37.
 {¶ 13} Dibert also argues that R.C. 2117.06 does not apply to him because he is not a "creditor" since his fraud claim did not accrue until discovery. We disagree. The Court of Appeals has already rejected the argument that a fraud claimant is not a "creditor" within the meaning of R.C. 2117.06 simply because he did not discover the fraud within the statute of limitations. The Ohio Savings Assoc. v.Friedman (Jan. 4, 1980), 8th Dist. No. 40001, at *4. In that case, Ohio Savings Association filed a claim against the estate of Friedman alleging that he had defrauded the association. Id. at *1. The executrix filed a motion for summary judgment arguing that the claim was time-barred under R.C. 2117.06, which at that time provided a four-month statute of limitations. Id. at *2. The association argued that it was not a "creditor" under R.C. 2117.06 and that the four-year statute of limitations governing frauds applied. Id. at *4. Rejecting this argument, *Page 9 
the Court of Appeals noted that "[t]he Ohio Supreme Court has held that a tort claimant is a "creditor" within the meaning of R.C. 2117.06, whether the claim is due or not due, liquidated or unliquidated." Id., citing Johnson, 136 Ohio St. 95. The Court further reasoned that the association was a "creditor" since its claim sounded in intentional tort, which is cognizable under R.C. 2117.06. Id. Furthermore, the Court noted that the specific statute of limitations found in R.C. 2117.06
governed over the general statute of limitations for fraud. Id., citingBreen v. Conn (1940), 64 Ohio App. 325, 28 N.E.2d 684 (statute permitting a minor to file an action anytime during the age of minority and during a limited time thereafter has no application to the presentment of claims to an executor or administrator.).
 {¶ 14} We find Friedman persuasive here. Dibert's arguments mirror those rejected by the Court in Friedman. Furthermore, the Ohio Supreme Court has defined "creditor" under R.C. 2117.06 broadly, stating:
 The court said that the term `creditor' was used in the statute `in a generic sense, and includes all persons having rights in action against the decedent. The section is founded on reasons of public policy; and its object is to promote the early and final settlement of estates, and to enable distribution to be made of the residuum among those entitled, freed from charges and encumbrances'.
Johnson, 136 Ohio St. at 99. To carve an exception to R.C. 2117.06's six-month statute of limitations and find that a tort claim of fraud can be brought against an estate regardless of the date of decedent's death does not further this public policy. *Page 10 
It is also contrary to the Ohio Supreme Court's view regarding applicable statute of limitations. See, e.g., Love, 37 Ohio St.3d at 99
("A special statutory provision which relates to the specific subject matter involved in litigation is controlling over a general statutory provision which might otherwise be applicable."). We also note that, interpreting the term "creditor" under a similarly defined provision, the Ohio Supreme Court found that a tort claimant becomes a creditor at the moment in which the cause of action accrues. Stein v. Brown (1985),18 Ohio St.3d 305, 308, 480 N.E.2d 1121. For all these reasons, we find that Dibert was a creditor under R.C. 2117.06(A); and therefore, the six-month statute of limitations found in R.C. 2117.06(C) applies.
 {¶ 15} Finally, Dibert argues that "fairness" requires that we apply the discovery rule to his claims. We, again, disagree. To start with, Dibert has waived this argument by failing to raise it in the trial court. See, e.g., State ex rel. Zollner v. Indus. Comm. (1993),66 Ohio St.3d 276, 278, 611 N.E.2d 830; (Memo Contra to Civ. R. 12(B)(6) motion, Doc. No. 12). Additionally, at least one court has rejected the application of the discovery rule for the tort of intentional interference with an inheritance. See In re Estate of Goehring, 7th Dist. Nos. 05 CO 27, 05 CO 35, 2007-Ohio-1133, ¶ 79. Likewise, the Court in Friedman found that "the statutory time period found in R.C. 2117.06
may not be excepted on `general equitable principles' outside the purview of R.C. 2117.07." 8th Dist. No. 40001, at *3, citing In reNatherson's Estate (1956), 102 Ohio App. 475, *Page 11 134 N.E.2d 852. See, also, In re Andres' Estate (1961), 114 Ohio App. 167,180 N.E.2d 855. R.C. 2117.07, at that time, provided specified conditions[1] for which the probate court could authorize claims outside of R.C. 2117.06's time limitation. In re Andres' Estate,114 Ohio App. at 168. Although R.C. 2117.07 has subsequently been modified, the legislature has continued to provide exceptions to R.C. 2117.06's time limitation. See R.C. 2117.06(C); R.C. 2117.061 (Medicaid State Recovery Program); R.C. 2117.37-42 (various contingent claims). Unless the claim falls into one of the enumerated exceptions provided by the revised code, R.C. 2117.06's statute of limitations applies. The discovery rule is an equitable principle outside the purview of these statutory exceptions, and thus, may not be used to evade R.C. 2117.06's six-month statute of limitations. See Friedman, supra; Andres,' supra;Palmer Mfg. Supply, Inc. v. BancOhio Natl. Bank (1994),93 Ohio App.3d 17, 22, 637 N.E.2d 386, Fn.2. For all these reasons, we find that the discovery rule does not apply to toll R.C. 2117.06(C)'s statute of limitations.
 {¶ 16} Dibert's assignment of error is, therefore, overruled. *Page 12 
 {¶ 17} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 WILLAMOWSKI, J., concurs.
 ROGERS, J., concurs in judgment only.
[1] R.C. 2117.07 allowed the probate court to authorize claims outside of R.C. 2117.06's time limitation for three reasons:
(A) That the claimant did not have actual notice of the decedent's death or of the appointment of the executor or administrator in sufficient time to present his claim within the period prescribed by Section 2117.06 of the Revised Code;
(B) That the claimant's failure to present his claim was due to the absence of the executor or administrator from his usual place of residence or business during a substantial part of such period or was due to any wrongful act or statement on the part of the executor or administrator or his attorney;
(C) That the claimant was subject to any legal disability during such period or any part thereof. Friedman, 8th Dist. No. 40001, at *3. *Page 1