NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0219n.06

**Case No. 13-3493**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JEROME J. PATE; FRANCES L. PATE; G. MURRAY CALDWELL; CHARLES L. DAVIS; GEORGE GLAUBER; MARTHA GLAUBER; GAIL LYTHOS, individually and as heir to other Nicholas Lythos; EARL C. SNELL; JOHN VARGO; DORIS C. VARGO, | ) ) ) ) ) ) ) | **FILED**<br>Mar 20, 2014<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| HUNTINGTON NATIONAL BANK, itself and as corporate successor to other First National Bank of Zanesville other County Savings Bank other Unizan Bank; FIFTH THIRD BANK, itself and as corporate successor by merger to other Citizens Bank other Strongsville Savings Bank; SUNTRUST BANK, N.A.; WELLS FARGO BANK, N.A., Itself and as corporate successor by merger to Wells Fargo Bank, N.A. and through it to other First United Bank other First United Bancorp other First Union; JOHN DOE BANKS 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | O P I N I O N |
| Defendants-Appellees. | ) | |

BEFORE: NORRIS, COLE, and GIBBONS, Circuit Judges.

COLE, Circuit Judge. In 1998 and 1999, the named plaintiffs in this class action purchased notes from non-existent businesses purportedly owned by James P. Carpenter III.

After several months, Carpenter stopped paying Plaintiffs the regular interest he promised, and he refused to redeem their notes at maturity. Plaintiffs now seek to recover from several banks where Carpenter kept accounts for his sham businesses and where Plaintiffs' checks to purchase the notes were deposited. The district court granted the banks' motions to dismiss on the basis that the statute of limitations had expired.

The sole claim Plaintiffs assert is a violation of § 3-420 of the Uniform Commercial Code ("UCC"), which prohibits the conversion of a written instrument. *See* Ohio Rev. Code § 1303.60. A separate provision of the UCC provides that claims for conversion of an instrument are subject to a three-year statute of limitations. *See* Ohio Rev. Code § 1303.16(G). If this provision alone governs, Plaintiffs' claim is time-barred. But Plaintiffs argue that a discovery rule set forth elsewhere in the Ohio Revised Code tolled the statute of limitations until they discovered the identity of the defendant banks. *See* Ohio Rev. Code § 2305.09. The only issue on appeal is whether this statutory discovery rule applies to Plaintiffs' claim.

This court has already heard two appeals arising from the same essential set of facts. In both cases, the court held that the statute of limitations on the plaintiffs' UCC claims had run. *See Bandy v. Fifth Third Bank*, 519 F. App'x 900 (6th Cir. 2013); *Metz v. Unizan Bank*, 649 F.3d 492 (6th Cir. 2011). We consider this question anew, but arrive at the same conclusion. Because we agree with the district court that the discovery rule set forth in Ohio Rev. Code § 2305.09 does not apply to Plaintiffs' claim, and therefore that it is time-barred, we affirm the district court's dismissal.

# I. BACKGROUND

## A. Factual Background

In 1998 and 1999, Plaintiffs invested in one of two fraudulent, non-existent business entities, Lomas de la Barra Development, Inc. ("Lomas") and Serengeti Diamonds, USA, Inc. ("Serengeti"), both purportedly owned by James P. Carpenter III. Plaintiffs purchased notes, and in exchange Carpenter promised Plaintiffs an annual return of 10.9%, which Carpenter claimed was guaranteed by a corporate third party. Although Carpenter did indeed issue "interest" payments at first, he stopped doing so sometime in 1999, and he also refused to redeem the notes at maturity. He then led Plaintiffs into false state-court litigation against the supposed third-party guarantor. Carpenter was convicted of eighteen counts of fraud in 2007 and is currently serving a nine-year sentence.

Plaintiffs now bring suit against banks at which Carpenter had maintained checking accounts in the name of his fraudulent business entities. They allege that the defendant banks "allowed Carpenter to open one or more depositary bank accounts . . . for business entities that had no legal or actual existence in Ohio," and that the banks unlawfully converted Plaintiffs' written instruments by depositing their checks into Carpenter's accounts. According to Plaintiffs, "[d]uring 1998 and through February 1999 . . . between one hundred and one hundred and fifty checks made out to Lomas and Serengeti," totaling over four million dollars, were deposited. Plaintiffs allege that Huntington began an investigation of Carpenter's accounts in January 1999, but that the bank nevertheless allowed Carpenter to withdraw Plaintiffs' funds. They also claim that Fifth Third Bank operated one checking account in Lomas's name, and that both SunTrust and Wells Fargo operated three accounts each for Lomas and Serengeti. Plaintiffs

allege that the banks handled a total of $10,600,000 in converted funds, but they disclaim damages above $4,999,999.

### B. Prior Litigation

The instant law suit is the fifth federal action filed against some or all of the defendant banks, stemming from their purported contribution to Carpenter's fraudulent scheme. The overwhelming majority of the individual plaintiffs in this case were involved in one or more of these prior actions. In each of the four cases, the claims against the defendant banks were dismissed, and this court affirmed in two separate appeals. *See Metz*, 649 F.3d at 495; *Bandy*, 519 F. App'x at 901.

The district court summarized each of the preceding cases in its opinion dismissing Plaintiffs' claims. We therefore decline to repeat this history in detail, but we offer a brief overview of the litigation. In the four cases preceding this one, the plaintiffs brought various common-law and UCC claims against banks where they and Carpenter held accounts. The banks moved to dismiss the UCC claims on the basis that they were time-barred, and in each case the district court granted the motion. *See Bandy v. Fifth Third Bank*, No. 1:08 CV 1064, 2011 WL 4463415, at *2, 5–9 (N.D. Ohio Sept. 27, 2011); *Blair v. JP Morgan Chase Bank Nat'l*, No. 1:08 CV 00971 SO, 2009 WL 8580038, at *10–14 (N.D. Ohio Sept. 30, 2009); *Loyd v. Huntington Nat'l Bank*, No. 1:08 CV 02301 DCN, 2009 WL 1767585, at *4–11 (N.D. Ohio June 18, 2009); *Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 572–73, 574–79 (N.D. Ohio 2006). In *Loyd*, *Blair*, and *Bandy*, the plaintiffs specifically identified Ohio Rev. Code § 2305.09—the same discovery rule statute at issue here—as the basis for their argument that their claims were not time-barred. And, in all three cases, the district court rejected this argument.

*Metz*, *Loyd*, and *Blair* were consolidated on appeal. This court determined that the plaintiffs had failed to state claims for conversion and could not have done so anyway due to Ohio Rev. Code § 1303.60(A), which provides that "[a]n action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument"—in other words, by an individual who signed the subsequently converted check. *See Metz*, 649 F.3d at 497–98. Although the court did not address § 2305.09 specifically, it concluded that the discovery rule did not apply to the plaintiffs' UCC claims and that Carpenter's and the banks' alleged wrongdoing occurred between 1998 and 2000, giving the plaintiffs until 2003 at the latest to bring suit. *Id.* Lastly, the court noted in dicta that even if the discovery rule were to apply, the statute of limitations would begin running when the plaintiffs had constructive, not actual, notice of the banks' wrongdoing, which occurred between 1998 and 2001. *Id.*

The same Sixth Circuit panel that decided *Metz* reaffirmed its holding in *Bandy v. Fifth Third Bank*, an appeal of the fourth case filed against the banks. In *Bandy*, the court held that the plaintiffs had failed to plead UCC conversion, but noted that even if they had pleaded the claims adequately, they "would still be dismissed based on the statute of limitations." 519 F. App'x at 903. The court further stated that the plaintiffs had "severely misconstrue[d] our holding in *Metz* . . . as binding authority that non-issuers and non-acceptors of instruments may bring a claim for U.C.C. conversion and apply the discovery rule to toll the statute of limitations." *Id.* Lastly, the court observed that "Ohio precedent . . . finds the discovery rule not applicable to any U.C.C. conversion claims." *Id.*

Plaintiffs now sue for the alleged conversion of third-party checks—that is, checks drawn up by intermediaries—allowing them avoid the prohibition against claims for conversion brought by "the issuer or acceptor of the instrument." *See* Ohio Rev. Code § 1303.60(A). They

unequivocally plead UCC conversion of an instrument as their only claim, and they argue that the discovery rule set forth in § 2305.09 has tolled the limitations period.

### C. Procedural History

Plaintiffs originally filed suit in the Court of Common Pleas of Summit County, Ohio on March 26, 2012, alleging conversion of a negotiable instrument in violation of Ohio Rev. Code § 1303.60. The defendant banks removed the case to the United States District Court for the Northern District of Ohio, pursuant to the Class Action Fairness Act of 2005. *See* 28 U.S.C. § 1332(d)(2). The banks moved to dismiss on the basis that Plaintiffs' claims were untimely, and Plaintiffs moved to remand the case to state court. The district court denied the motion to remand and then granted the motion to dismiss. Specifically, the district court held that Plaintiffs' UCC conversion claim was time-barred and that the limitations period set forth at § 1303.16(G) was not tolled by application of the discovery rule codified at § 2305.09. The court further reasoned that, even if the discovery rule applied, Plaintiffs had nevertheless failed to assert their rights before the expiration of the extended limitations period. Plaintiffs appealed.

## II. ANALYSIS

### A. Relevant Ohio Statutes

This appeal centers on the relationship between three provisions of the Ohio Revised Code, two of which are derived from the Uniform Commercial Code, and one of which is not. The first provision prohibits the conversion of a written instrument and forms the basis for Plaintiffs' claim:

> The law applicable to conversion of personal property applies to instruments. An instrument also is converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument *or if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment*.

Ohio Rev. Code § 1303.60(A) (emphasis added); *see also* U.C.C. § 3-420(a) (2012). The banks argue—and the district court agreed—that Plaintiffs' claim is time-barred under another UCC provision, which states:

> Unless governed by other law regarding claims for indemnity or contribution, any of the following actions shall be brought within three years after the cause of action accrues:
>
> (1) An action for conversion of an instrument . . . .

Ohio Rev. Code § 1303.16(G); *see also* U.C.C. § 3-118(g) (2012). This section "does not define when a cause of action accrues." Ohio Rev. Code § 1303.16 cmt. n.1 (1990). The application notes provide the following guidance: "Accrual of a cause of action is stated in other sections of Article 3 [of the UCC] such as those that state the various obligations of parties to an instrument." *Id.*

However, Plaintiffs contend that a third provision in Ohio's code governs the applicable statute of limitations. Section 2305.09(B) provides that a claim "[f]or the recovery of personal property, or for taking or detaining it" can be brought "within four years after the cause thereof accrued." It further explains that, in actions "for the wrongful taking of personal property, the causes thereof shall not accrue *until the wrongdoer is discovered*." *Id.* § 2305.09 (emphasis added). Plaintiffs therefore argue that their cause of action did not accrue until they actually became aware of the identities of the banks that had converted their checks.

**B. Standard of Review**

This court reviews de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). While the district court must "accept as true all the allegations

contained in the complaint and construe the complaint liberally in favor of the plaintiff," the district court is not required to "accept as true legal conclusions or unwarranted factual inferences." *Id.* A complaint must allege facts that "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## C. Statute of Limitations Pertaining to UCC Conversion Claim

Plaintiffs first argue that the district court should not have dismissed their claim as time-barred at the motion to dismiss stage because the expiration of a limitations period is an affirmative defense, with the defendant carrying the burden of proof. However, the case on which Plaintiffs rely acknowledges that "dismissal is warranted 'if the allegations in the complaint affirmatively show that the claim is time-barred.'" *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). Such are the circumstances here. Plaintiffs do not dispute the district court's factual finding that the banks' alleged acts of conversion occurred in 1998 and 1999—during which time they also became aware that Carpenter was no longer paying interest on their notes and refused to redeem them. Rather, they dispute the legal conclusion that they cannot benefit from the statutory discovery rule. If the district court's legal interpretation is correct, it was permitted to dismiss Plaintiffs' claim as untimely at the motion to dismiss stage.

In arguing that dismissal pursuant to the statute of limitations was improper, Plaintiffs obliquely refer to "fraudulent concealment." They correctly note that under Ohio common law, "[t]he doctrine of fraudulent concealment tolls the statute of limitations as to those defendants who committed or participated in the concealment." *Metz*, 416 F. Supp. 2d at 579; *see also Lutz*,

717 F.3d at 475. But Plaintiffs do not argue on appeal that the banks fraudulently concealed their role in Carpenter's scheme. While their complaint could be read to allege that Huntington engaged in fraudulent concealment, this argument is not addressed in any depth in Plaintiffs' brief, nor would it apply to any other defendant. All Plaintiffs offer on this subject is the conclusory assertion that the banks handled Plaintiffs' money "in [such] a way that the act of theft was concealed from the victims for years." Plaintiffs also did not address fraudulent concealment in their district court briefs opposing the banks' motions to dismiss.

Therefore, any argument pertaining to fraudulent concealment has been waived in the appellate proceedings, and this court should not consider it as a possible means of extending the limitations period. *See Popovich v. Cuyahoga Cnty. Court of Common Pleas*, 276 F.3d 808, 823 (6th Cir. 2002) (en banc) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)); *see also Lutz*, 717 F.3d at 475 (noting that, to qualify for tolling due to fraudulent concealment, a plaintiff must "show that the defendant engaged in a course of conduct to conceal evidence of the alleged wrongdoing," and requiring that "'the acts constituting fraudulent concealment of a claim be pled in the complaint'" (quoting *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006)). Thus, the district court did not err simply by dismissing Plaintiffs' claims at the motion to dismiss stage.

### D. Applicability of Statutory Discovery Rule to UCC Conversion Claim

Plaintiffs make three arguments to support their contention that the discovery rule applies to their claims. First, they read *Metz* to hold that the statutory discovery rule applies so long as a plaintiff is not precluded from bringing a UCC conversion claim because he or she is the issuer of the instrument in question. They note that this court's decision in *Bandy* is unpublished and

claim that it should therefore be disregarded to the extent that it conflicts with *Metz*. Second, they posit that this court in *Metz* and *Bandy* held only that the *common-law* discovery rule does not apply to their UCC conversion claims, but did not bar application of the *statutory* discovery rule codified at Ohio Rev. Code § 2305.09. Third, they argue that the limitations period began running when they had actual, not constructive, knowledge of the banks' wrongdoing.

Each court to have considered Plaintiffs' argument that a discovery rule applies to their claims has rejected it. Judge Nugent was the first to consider the discovery rule question in *Metz* and did so thoroughly. 416 F. Supp. 2d at 574–79. Although the plaintiffs in *Metz* did not bring a claim for conversion of an instrument in violation of the UCC, they brought four other UCC claims: one against their own banks for charging their accounts for checks not "properly payable," and three against Carpenter's banks for violations of the duty to exercise reasonable care and good faith and for "money had and received." *Id.* at 574–75. These UCC claims are subject to three-year statutes of limitations set forth in the UCC and codified in Ohio's code. *See* Ohio Rev. Code §§ 1303.16(G), 1304.09.

The district court in *Metz* noted that although the applicability of the discovery rule to § 1303.16(G) had not been directly addressed, Ohio courts had heard cases with similar claims. In considering whether the discovery rule applied in these cases, the courts had "focused on the objectives of the UCC in promoting negotiability, finality, and uniformity in commercial transactions" and had surveyed authority from other states, concluding that "the 'great bulk of authority runs very strongly against' the application of the discovery rule for claims involving the theft or conversion of negotiable instruments." *Id.* at 575 (quoting *Palmer Mfg. & Supply, Inc. v. BancOhio Nat'l Bank*, 637 N.E.2d 386, 390 (Ohio Ct. App. 1994)). Ohio courts also balanced the competing interests of, on the one hand, imposing a strict limitations period, and, on

the other, allowing litigants to bring claims "where the injury complained of may not manifest itself immediately." *Id.* at 576 (citing, *inter alia*, *O'Stricker v. Jim Walter Corp.*, 447 N.E.2d 727 (Ohio 1983)). Additionally, the court in *Metz* considered the clear language of the statute and noted that the legislature could have included express language to indicate that a discovery rule applied—as they had done for some causes of action—but refrained from doing so. *Id.* at 578 (citing *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 211 (Ohio 1989)).

This court affirmed *Metz* with only a brief discussion of the discovery rule's applicability. *See* 649 F.3d at 497–98. However, a subsequent decision from one of Ohio's appellate courts confirmed that the district court's analysis squared with Ohio law. *See Mattlin Holdings, LLC v. First City Bank*, 937 N.E.2d 1087, 1089–91 (Ohio Ct. App. 2010). In *Mattlin*, the plaintiff brought a claim for conversion under the UCC, and the court unequivocally held that "in the absence of fraudulent concealment . . . the statute of limitations set forth in [O.]R.C. § 1303.16(G) is not tolled by a discovery rule." *Id.* at 1091. The state court's opinion even referred to Judge Nugent's opinion in *Metz* and relied heavily on its logic. *Id.* at 1089–91; *see also W. Ohio Colt Racing Ass'n v. Fast*, No. 10-08-15, 2009 WL 737776, at *5 (Ohio Ct. App. March 23, 2009) (applying § 1303.16(G)'s three-year statute of limitations to UCC conversion of an instrument claim and stating that "[g]enerally, a cause of action accrues when the wrongful act is committed"). In *Bandy*, this court cited *Mattlin* as authority establishing that the discovery rule is not applicable to UCC conversion claims. *See* 519 F. App'x at 903. *Mattlin* remains good law in Ohio.

### 1. Plaintiffs' Reading of Metz and Bandy

Plaintiffs raise several arguments in an effort to persuade the court that *Metz*, *Bandy*, and *Mattlin* do not control. They first insist that one particular sentence from *Metz* establishes that

they are entitled to the benefit of § 2305.09's discovery rule. In the section of the opinion concluding that the *Metz* plaintiffs had failed to plead UCC conversion claims, the opinion noted, "Plaintiffs cannot possibly re-characterize their claims to make use of the discovery rule in § 2305.09." 649 F.3d at 497. From this, Plaintiffs deduce that, if they had presented claims for UCC conversion, the statutory discovery rule would necessarily apply.

This reading must fail, for three reasons. First, immediately following this sentence, *Metz* went on to hold that the discovery rule categorically did not apply to the three-year statute of limitations for various UCC claims, set forth at § 1303.16(G). *Id.* at 497–98. This unambiguous conclusion dispels any suggestion that § 2305.09 might apply to a claim for UCC conversion of an instrument, because this cause of action is specifically identified in § 1303.16(G). Next, as the district court pointed out, the *Bandy* panel—consisting of the same judges who decided *Metz*—expressly rejected the Plaintiffs' reading of *Metz.* 519 F. App'x at 903. Finally, *Mattlin* also firmly establishes that the discovery rule does not toll the three-year statute of limitations for UCC conversion claims. *See* 937 N.E.2d at 1091.

### 2. Statutory and Common-Law Discovery Rules

Plaintiffs next argue that *Metz* and *Mattlin* are inapplicable because those cases conclude only that Ohio's *common law* discovery rule does not apply to UCC conversion claims. They claim that *Metz* and *Mattlin* shed no light on application of the *statutory* discovery rule set forth in § 2305.09. It is true that neither of the *Metz* opinions, nor *Mattlin*, addresses § 2305.09 specifically; rather, they discuss the discovery rule as a general principle. However, the logic of these cases extends to application of any discovery rule, whether derived from common law or from statute. Plaintiffs' attempts to distinguish their case from *Metz* and *Mattlin* are unavailing.

Ultimately, Plaintiffs ask this court to overlook the fact that the UCC claim in question is already subject to a statute of limitations established by another provision of the UCC itself, which specifically mentions claims for conversion of an instrument. *See* Ohio Rev. Code § 1303.16(G). The district court in *Loyd* rejected, on precisely these grounds, the plaintiffs' arguments that § 2305.09 applied to their UCC claims, noting that "§ 2305.09 has no application to claims which are given their own specific statute of limitations in the UCC." 2009 WL 1767585, at *6. We agree. Our understanding of the relationship between the UCC provisions and § 2305.09 is reflected in an Ohio appellate court decision, which noted that, "[p]rior to August 19, 1994, [O.]R.C. § 1305.09 was the only statute setting forth a statute of limitations for conversion claims. On August 19, 1994, however, the Uniform Commercial Code was amended to provide for a three-year statute of limitations for conversion claims." *Geraldo v. First Dominion Mut. Life Ins. Co.*, No. L-01-1210, 2002 WL 31002770 at *3 (Ohio Ct. App. Sept. 6, 2002). As the Supreme Court has observed, "[t]he implications of a statute may be altered by the implications of a later statute," and "[t]his is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (internal citation and quotation marks omitted); *see also RadLAX Gateway Hotel, L.L.C. v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) ("It is a commonplace of statutory construction that the specific governs the general."). Section 1303.16(G) specifically identifies "conversion of an instrument" as subject to a three-year statute of limitations, whereas § 2305.09 refers in far more general terms to the "wrongful taking of personal property." Plaintiffs do not identify any case law or legislative materials to establish that § 2305.09 controls despite the fact that § 1303.16 is both more recent and more relevant.

### 3. Meaning of the Term "Accrues"

Plaintiffs derive their third argument from the text of Ohio Rev. Code § 1303.16(G), which notes that claims for conversion of an instrument "shall be brought within three years after the cause of action *accrues*." They claim that a cause of action for conversion of an instrument accrues when the would-be plaintiff obtains actual knowledge of a wrongdoing. But this is an old argument, wrapped in new packaging. To the extent that Plaintiffs base their reading of the word "accrues" on the statutory discovery rule, their argument fails, for the reasons addressed above. And, to the extent that they rely on the common-law discovery rule, this argument has been unambiguously rejected, by an Ohio appellate court in *Mattlin* and by this court in *Matz* and *Bandy*.

"Absent legislative definition, it is left to the judiciary to determine when a cause [of action] 'arose.'" *O'Stricker*, 447 N.E.2d at 730. The application notes to § 1303.16 direct us to "other sections of Article 3" of the UCC to determine when a cause of action accrues under the statute. Ohio Rev. Code § 1303.16 cmt. n.1. Plaintiffs have not pointed out any language in Article 3 establishing that a discovery rule tolls their conversion claim. Thus, we adopt the judicial interpretations of what "accrues" means in this context—as established by *Mattlin*, *Metz*, and *Bandy*—and find Plaintiffs' argument lacking in merit. We conclude that the statutory discovery rule contained in § 2305.09 does not apply to a UCC claim for conversion of an instrument. In the absence of fraudulent concealment by the banks, then, Plaintiffs' cause of action accrued when the banks engaged in the alleged conversion. *See Mattlin*, 937 N.E.2d at 1091.

The last argument Plaintiffs raise is that their claim for UCC conversion was tolled during the pendency of the *Metz* litigation. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S.

345, 353–54 (1983). They maintain that this period began in May 2005, when the case was filed, and ended when class certification was denied in March 2009. But their limitations period expired in 2003 at the latest, as this court has already concluded. *Metz*, 649 F.3d at 498. Because we hold that the limitations period had passed before *Metz* was filed, we do not find it necessary to consider this argument. We agree with the district court that Plaintiffs' claim is untimely.

## III. CONCLUSION

For the reasons addressed above, we affirm the district court's dismissal of Plaintiffs' claim.